UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

Applicant,

v.                                              No. 21-mc-    (    )

TERRAFORM LABS PTE, Ltd. and
DO KWON,

Respondents.

---

**DECLARATION OF ROGER J. LANDSMAN  IN SUPPORT OF U.S. SECURITIES
AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW
CAUSE AND FOR AN ORDER REQUIRING COMPLIANCE WITH SUBPOENAS**

I, Roger J. Landsman, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1.      I am employed by the United States Securities and Exchange Commission

("SEC" or "Commission") as an attorney in the Division of Enforcement at the SEC's

headquarters in Washington, DC.  I am admitted to the Bars of New York and the District of

Columbia.

2.       I submit this Declaration in support of the Commission's Application for an

Order to Show Cause and for an Order Requiring Compliance with Subpoenas directing

Respondents Do Kwon and Terraform Labs PTE Ltd. ("Terraform") to comply with

investigative subpoenas served upon Mr. Kwon and Terraform in connection with the

Commission's non-public investigation entitled *In the Matter of Mirror Protocol* (Internal File

No. HO-14164) (the "Mirror Protocol Investigation").  This Declaration is based upon my direct

participation in the Mirror Protocol Investigation and sets forth both (1) the nature of the

investigation; and (2) the Commission's unsuccessful efforts to secure Mr. Kwon's and

1

Terraform's compliance with investigative subpoenas seeking documents from Mr. Kwon and Terraform and testimony from Mr. Kwon.

## I.   <u>Nature of the SEC's Mirror Protocol Investigation</u>

3.     The Commission's Mirror Protocol Investigation concerns, among other things, whether persons or entities have engaged in acts constituting violations of various provisions of the federal securities laws, including, but not limited to, Section 5 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77e], prohibiting the unregistered offer or sale of securities; Section 6(l) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78f(l)], prohibiting any person from effecting transactions in a  security-based swap with or for a person that is not an eligible contract participant unless such transaction is effected on a national security exchange; Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)], prohibiting acting as an unregistered broker or dealer; and Section 7(a) of the Investment Company Act of 1940 ("Investment Company Act") [15 U.S.C. § 80a–7], prohibiting securities transactions by unregistered investment companies, in connection with Terraform's involvement with the Mirror Protocol, including Terraform's participation in the creation, promotion, and offer to sell mAssets and MIR tokens to U.S. investors.

4.     Terraform is a Singapore-incorporated computer programming and digital asset[1] company that regularly transacts business in the United States, including by contracting with

---

[1]     On July 25, 2017, the SEC issued the *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO*, which advised on the "applicability" of the federal securities laws to "virtual organizations or capital raising entities that use distributed ledger or blockchain technology to facilitate capital raising and/or investment" and finding that the offering of digital assets at issue in that report were securities.  The term "digital asset" or "digital token" generally refers to an asset issued and/or transferred using distributed ledger or blockchain technology, including assets sometimes referred to as "cryptocurrencies," "virtual currencies," digital "coins," and digital "tokens."

U.S.-based companies, such as a prominent digital asset-trading platform incorporated in Delaware.  Several employees of Terraform appear to reside in the United States, including Terraform's General Counsel (located in Pennsylvania), its Business Development lead (located in Texas), its Head of Research (located in California), and its Director of Special Products (located in New York).

5.     Do Kwon is the co-founder and Chief Executive Officer ("CEO") of Terraform and a resident of the Republic of Korea.  Mr. Kwon graduated with a Bachelor of Science degree in computer science from Stanford University in California and travels to the United States to conduct business on behalf of Terraform, including to a digital asset and blockchain conference held in New York City in September 2021.

6.     To the best of my understanding, Terraform launched the Mirror Protocol in December 2020.  The Mirror Protocol is a series of computer codes written on a blockchain[2] through which users create digital assets,[3] called Mirrored Assets, or "mAssets."  The mAssets "mirror" equity or other types of securities traded in the United States, including those traded on U.S. national securities exchanges, such as shares of Apple, Inc. or Tesla, Inc., in that they are designed so that their value rises and falls with the value of those securities.  The mAssets corresponding to those equities have been named as "mAAPL" or "mTSLA."  *See* Terraform website, https://terra.mirror.finance and https://docs.mirror.finance (last visited November 10,

---

[2]     A blockchain is a type of distributed ledger or peer-to-peer database that is spread across a computer network and records all transactions in the network in theoretically unchangeable, digitally recorded data packages called "blocks."  Each block contains a batch of records of transactions, including a timestamp and a reference to the previous block, so that the blocks together form a chain.   The system relies on cryptographic techniques for securely recording transactions.  A blockchain can be shared and accessed by anyone with appropriate permissions.

[3]     The term "digital asset" or "digital token" generally refers to an asset issued and/or transferred using distributed ledger or blockchain technology, including assets sometimes referred to as "cryptocurrencies," "virtual currencies," digital "coins," and digital "tokens."

2021) ("mAssets mimic the price behavior of real-world assets and give traders anywhere in the world open access to price exposure without the burdens of owning or transacting real assets."). Users access the Mirror Protocol through a variety of means, including through Terra's website and web application.  *See* Terraform website, https://docs.mirror.finance/user-guide/getting-started (last visited November 5, 2021).

7.     mAssets are created or "minted" when sufficient collateral is deposited in a so-called "smart contract," a computer program designed to execute the terms of a contract when certain triggering conditions are met.  After mAssets have been minted, they may be traded by investors, including investors located in the United States, through Terraform's web application. According to Terraform's web application, the total value of mAssets outstanding under the Mirror Protocol is more than $437 million, as of November 8, 2021.  *See* Terraform website, https://terra.mirror.finance.

8.     The Mirror Protocol also provides users with the ability to obtain Mirror Tokens or "MIR tokens," a digital asset that Terraform describes as the "governance token" for the Mirror Protocol.  *See* Terraform website, https://docs.mirror.finance/protocol/governance.  As of November 8, 2021, there are approximately 120 million MIR tokens in circulation, with a market capitalization of approximately $407 million.  https://terra.mirror.finance.  MIR tokens receive value based upon, among other things, fees generated under the Mirror Protocol.  MIR tokens have been or may be purchased through several means, including through entry into a contract with Terraform and through purchasing tokens in the secondary trading market via various digital asset trading platforms.

9.     Both mAssets and MIR tokens are offered and available for purchase by U.S. investors through Terraform's web application.  MIR tokens can also be purchased on digital

asset trading platforms.  Upon information and belief, U.S. investors have purchased both mAssets and MIR tokens.  Terraform and Mr. Kwon promote the Mirror Protocol, mAssets, and the MIR token through, among other means, Terraform's website, web application, social media accounts, podcast interviews, and through U.S. media.  *See, e.g. Our mission is to bring decentralized monies to as many blockchains as possible: Terraform Labs CEO* (July 12, 2021) Yahoo! News (https://news.yahoo.com/mission-bring-decentralized-monies-many-171201969.html); and *Fake Tesla, Apple Stocks Have Started Trading on Blockchains* (July 6, 2021) Bloomberg News (https://www.bloomberg.com/news/articles/2021-07-06/fake-tesla-apple-stocks-have-started-trading-on-blockchains).  In addition, Terraform appears to be actively conducting business in the U.S. by, among other things, (1) entering into a contract with a U.S. digital asset trading platform concerning the listing of MIR tokens; (2) Mr. Kwon corresponding with a U.S. digital asset trading platform and discussing listing of MIR tokens; and (3) Terraform completing an extensive questionnaire to the U.S. digital asset trading platform in furtherance of the digital asset trading platform's decision to custody MIR tokens, and the questionnaire was potentially used for the platform making a listing determination as well.

10. It appears that Terraform also continues to play an active role in maintaining and updating the technological architecture for the Mirror Protocol.

11. Terraform, the mAssets and the MIR tokens are not registered with the SEC in any capacity.  For example, Terraform has not registered any offering of securities pursuant to the Securities Act, nor has it registered the mAssets or MIR tokens as a class of securities under the Exchange Act.  Terraform has also not registered with the SEC as a broker or dealer under Section 15(a) of the Exchange Act, or as an investment company under Section 7(a) of the Investment Company Act.

12.     On May 7, 2021, pursuant to Section 20(a) of the Securities Act [15 U.S.C.

§ 77t(a)], Section 21(a) of the Exchange Act [15 U.S.C. § 78u(a)], and Section 42(a) of the

Investment Company Act [15 U.S.C. § 80a-41], the Commission issued an Order Directing

Private Investigation and Designating Officers to Take Testimony in the Mirror Protocol

Investigation (the "Formal Order").[4]  Among other things, the Formal Order:

    a.  directed, pursuant to Section 20(a) of the Securities Act, Section 21(a) of
the Exchange Act, and Section 42(a) of the Investment Company Act that
the Commission staff conduct a private investigation to determine whether
any persons or entities have engaged in acts or practices in violation of
various provisions of the federal securities laws; and

    b.  designated, pursuant to Section 19(c) of the Securities Act, Section 21(b) of
the Exchange Act, and Section 42(b) of the Investment Company Act,
certain individuals, including myself, as officers of the Commission
empowered to administer oaths and affirmations, subpoena witnesses,
compel their attendance, take evidence, and require the production of any
books, papers, correspondence, memoranda, or other records deemed
relevant or material to the investigation.

## II.     The Commission's Unsuccessful Efforts to Secure Documents from Terraform and Mr. Kwon and Testimony from Mr. Kwon

13.     On May 20, 2021, I sent an email to Mr. Kwon and Terraform's Chief Financial

Officer to request a voluntary meeting with a representative of Terraform regarding the Mirror

Protocol.  A copy of my May 20, 2021 email is attached as **Exhibit 1**.  After receiving a

notification that the email had not been opened, I resent the email to Mr. Kwon and Terraform's

CFO on May 23, 2021.  A copy of my May 23, 2021 email is **Exhibit 2**.

14.     Several days later, on May 27, 2021, my co-counsel, Kathleen Hitchins, and I,

spoke on a call with Douglas W. Henkin and Stephen J. Senderowitz of the law firm Dentons US

---

[4]     Commission formal orders are not public. The Commission has not included a copy of
the Formal Order with this Application and respectfully requests that the Court conduct an *in
camera* review if the Court wishes to examine it.  Counsel for Respondents Terraform and Mr.
Kwon requested a copy of the formal order, which was provided to counsel on October 5, 2021.

LLP ("Dentons") after they contacted me.  Mr. Henkin indicated that he and Mr. Senderowitz

represented Terraform regarding the SEC's Mirror Protocol Investigation and asked what interest

the Commission had in Terraform and Mr. Kwon, who Mr. Senderowitz described as a foreign

company and foreign witnesses.  I told Mr. Henkin and Mr. Senderowitz that the SEC was

interested in an interview with Mr. Kwon or another representative of Terraform to better

understand the Mirror Protocol.  In response, during subsequent conversations, Dentons offered

that Mr. Kwon would agree to an interview if the SEC would enter into a proffer agreement with

Mr. Kwon, under which statements made by Mr. Kwon could not be used against him or

Terraform in subsequent proceedings, except that the Commission may use statements made

during the proffer session as a source of leads to discover additional evidence and for

impeachment or rebuttal purposes if Mr. Kwon or Terraform testifies or argues inconsistently in

a subsequent proceeding. *See SEC Enforcement Manual* §§ 3.3.3, 3.3.7 (Nov. 28, 2017)

(available at https://www.sec.gov/divisions/enforce/enforcementmanual.pdf).

15.     Following further negotiations, the SEC entered into a proffer agreement with Mr.

Kwon and Terraform.  The SEC staff, including myself, then interviewed Mr. Kwon by

videoconference for approximately four and a half hours on July 8, 2021.  Mr. Senderowitz and

Mr. Henkin represented Mr. Kwon and Terraform during the interview.  Among other things,

Mr. Kwon was unable to provide specific information or failed to answer several questions on a

variety of topic areas, including Terraform's relationship with a U.S.-based digital asset trading

platform, its contacts with third parties regarding the sale of MIR tokens, the corporate structure

of Terraform, whether Terraform owned any MIR tokens, and Terraform raising capital in

connection with the Mirror Protocol.

16.     Two weeks later, on July 22, 2021, I, along with Ms. Hitchins, initiated a call with Mr. Henkin and Mr. Senderowitz, to discuss follow-up requests to Mr. Kwon's proffer interview. Among other things, I explained that the SEC proposed sending voluntary document requests to Terraform, and I inquired whether Terraform would agree to produce documents related to the Mirror Protocol.  In response, Mr. Senderowitz stated that Terraform could not commit whether it would voluntarily produce documents until the SEC provided the document requests.  Later that same day, I emailed the SEC's document requests to Mr. Henkin and Mr. Senderowitz.  A copy of my July 22, 2021 email transmitting the document requests, along with the document requests, is attached as **Exhibit 3**.  The document request included requests for documents regarding topics that Mr. Kwon did not provide specific information during the proffer session, such as the corporate structure of Terraform and its contacts with third parties regarding the sale of MIR tokens.  The document request also asked for information concerning topics that Mr. Kwon did discuss during the proffer interview.

17.     On July 27, 2021, Ms. Hitchins and I had a telephone call with Mr. Henkin and Mr. Senderowitz regarding the SEC's document requests, including offering to modify the document requests based upon counsel's concerns.  Mr. Senderowitz indicated that Terraform could produce certain documents, but had concerns regarding the proprietary nature of several of the document requests by the SEC.

18.     On July 28, 2021, Ms. Hitchins and I had a follow-up call with Mr. Henkin and Mr. Senderowitz to discuss the SEC's document requests.  Mr. Henkin and Mr. Senderowitz stated that Terraform took issue with certain of the requests for various reasons, including how the requests were phrased and that several of the documents were allegedly available in the public domain.  Ms. Hitchins and I responded to many of Mr. Henkin and Mr. Senderowitz's

comments, explaining what the document requests were seeking.  In addition, we requested that

Mr. Henkin and Mr. Senderowitz provide links to the documents Mr. Henkin and Mr.

Senderowitz said were in the public domain, but they never did so.  In an effort to allow the

parties to work cooperatively to resolve any disputes, on the same day, I emailed Mr. Henkin and

Mr. Senderowitz to request that they state their objections to the document requests in writing.  A

copy of my July 28, 2021 email to Mr. Henkin and Mr. Senderowitz is attached as **Exhibit 4**.

Mr. Senderowitz responded the following day that Terraform hoped to provide its written

objections within the following one or two days.  A copy of Mr. Senderowitz's July 29, 2021

email is attached as **Exhibit 5**.

   19. The following week, the SEC staff and Dentons continued to have

communications regarding the timing of Terraform providing a written description of

Terraform's objections to the document requests, but did not receive those objections.  On

Monday August 16, 2021, I emailed Mr. Henkin and Mr. Senderowitz to inquire about the status

of the responses to the voluntary document requests, because we had not received the objections.

A copy of my August 16, 2021 email is attached as **Exhibit 6**.

   20. The following day, on August 17, 2021, Mr. Senderowitz provided Terraform's

responses to our voluntary document requests, which included objections that certain document

requests were allegedly "unclear, overbroad, sought information not relevant to the

Commission's inquiry, sought production of publicly available data, or sought information

Terraform does not possess."  A copy Mr. Senderowitz's letter containing Terraform's response

to the SEC's voluntary document requests is attached as **Exhibit 7**.  Nonetheless, Mr.

Senderowitz concluded by stating that "Terraform desires to cooperate with the Commission on

a voluntary basis, to provide information reasonably related to the Commission's inquiry that

Terraform has in its possession and identify public sources to which it can direct the Commission's attention."

21.     In Mr. Senderowitz's August 17, 2021 letter, he also wrote "we indicated [on the July 28, 2021 call] that it is important for the Commission to advise us of (1) its intentions related to Terraform's status in the investigation, (2) its intentions relating to the Mirror Protocol, and whether (3) the Commission is seeking a specific goal with respect to the operation of the Mirror Protocol (so that Terraform can evaluate whether it might be able to assist the Commission in a cost-efficient and satisfactory resolution of the matter)."

22.     In response to Mr. Senderowitz's letter, a week later, on August 25, 2021, Ms. Hitchins and I initiated a telephone call with Mr. Henkin and Mr. Senderowitz to discuss Terraform's response to the SEC's document requests, including its request for information on the Commission's intentions.  Among other things, I explained that the SEC staff was investigating whether MIR tokens and mAssets were securities and had concerns these potential securities were being offered and sold in the United States in violation of the federal securities laws, and further pointed out Terraform's contacts with the United States.  For example, I explained that Terraform employees continued to promote the Mirror Protocol and its associated assets (the MIR tokens and mAssets) to investors located in the United States.  We offered Terraform the opportunity to respond to and address our concerns.

23.     On September 3, 2021, Ms. Hitchins and I had another telephone call with Mr. Henkin and Mr. Senderowitz.  During the call, Mr. Henkin explained that Terraform wished to cooperate with the SEC's investigation and that it could take limited steps to restrict the future sale of mAssets and MIR tokens in the United States if the SEC would agree not to bring an enforcement action against Terraform.  At the conclusion of the September 3, 2021 call, I again

inquired about the status of Terraform's production of documents, noting again that Terraform had still not produced any documents in response to the SEC's document request.

24.     On September 15, 2021, Ms. Hitchins, my supervisor and I, had a follow-up telephone call with Mr. Henkin and Mr. Senderowitz.  We informed counsel that our investigation was still ongoing, as we had done on prior occasions.  We further discussed Terraform's response to the SEC's document requests.

25.     On September 17, 2021, Mr. Henkin and Mr. Senderowitz called me and stated that Terraform wished to discuss how it could resolve the Mirror Protocol Investigation.

**III.     The SEC's Service of Subpoenas upon Terraform and Mr. Kwon**

26.     On September 13, 2021, I learned that Mr. Kwon was scheduled to speak at the Mainnet conference, a digital asset conference held in New York, NY.  I learned this information through Mr. Kwon's publicly available Twitter account.  Do Kwon (@stablekwon), Twitter (September 9, 2021, 12:34 p.m.) ("I almost never go to crypto conferences, but when I do I speak @messaricrypto Mainnet.  Come say hi.").

27.     The conference was marketed on Mainnet's public website as a "gather[ing] [of] crypto leaders, operators, builders, and investors[.]"  https://mainnet.events/ (last visited November 1, 2021).  The conference's public website announced Mr. Kwon as a speaker in his capacity as the co-founder and CEO of Terraform and noted when and where he would speak.

28.     My co-counsel, supervisor and I concluded that it was necessary and appropriate to serve subpoenas upon Terraform and Mr. Kwon while he was located in the United States conducting business on behalf of Terraform.  To the best of my knowledge, after inquiry, Mr. Henkin and Mr. Senderowitz had not filed a notice of appearance pursuant to Rule 102.

29.     On September 17, 2021, pursuant to the Formal Order, I prepared subpoenas

requesting documents from Terraform and testimony and documents from Mr. Kwon related to

the Mirror Protocol, MIR tokens, and mAssets.  The September 17, 2021 investigative subpoena

to Terraform seeking documents is attached as **Exhibit 8** and required that Terraform produce

documents by October 4, 2021.  The September 17, 2021 investigative subpoena to Mr. Kwon

seeking documents and testimony is attached as **Exhibit 9**.  The subpoena addressed to Mr.

Kwon required him to produce documents by October 4, 2021 and to testify on October 27,

2021.  I also requested that the SEC's contracted process server, Cavalier Courier & Process

Service, serve Mr. Kwon with both subpoenas.

30.     The subpoenas seek documents necessary for the Commission's investigation

relating to the Mirror Protocol, including, among other things, documents concerning investors

who purchased MIR tokens from Terraform; Terraform's presentations to investors in MIR

tokens; Terraform's marketing and promotion of the Mirror Protocol, MIR tokens, and mAssets,

including Terraform's and Kwon's communications with investors; Terraform's ability to

control, effect or change the Mirror Protocol; Terraform's agreements with third parties

regarding the sale or transfer of mAssets and MIR tokens, the corporate structure of Terraform,

whether Terraform owns any MIR tokens, and whether Terraform has raised capital in

connection with the Mirror Protocol.  The documents sought through the subpoenas included

documents that the SEC Staff had deemed necessary and initially sought through the July 22

voluntary document request for which Terraform produced no documents.  In addition, the

subpoenas sought documents on new areas of inquiry developed since our initial document

requests to Terraform, and the subpoenas modified and clarified certain language that counsel for

Mr. Kwon and Terraform took issue with previously.  No other source could cover all the

documents requested in the subpoenas.  Without the requested documents, the Commission lacks

important information about the Mirror Protocol, mAssets, and the MIR tokens, the subject

matters of the SEC's investigation, including whether mAssets and MIR tokens qualify as

securities or security-based swaps under the federal securities law.

31.     The subpoena calling for Kwon's testimony was issued because the Commission

staff determined that it was necessary to seek the sworn testimony of Respondent Kwon

regarding, among other topics, Terraform's marketing and promotion of the Mirror Protocol,

MIR tokens, and mAssets, including Terraform's and Kwon's communications with investors;

Terraform's presentations to investors in MIR tokens; Terraform's relationship with a U.S.-based

digital asset trading platform, its contacts with third parties regarding the sale of MIR tokens, the

corporate structure of Terraform, whether Terraform owns any MIR tokens, and whether

Terraform has raised capital in connection with the Mirror Protocol.  In deciding to issue a

subpoena for Kwon to testify, Commission staff determined that it was necessary to obtain his

testimony of these subjects as Kwon was the CEO of Terraform.

32.     On September 20, 2021, Mr. Kwon was personally served with the September 17,

2021 subpoenas.  A copy of the proofs of service is attached as **Exhibit 10 and 11**.  I then

emailed a copy of the September 17, 2021 subpoenas to Mr. Henkin and Mr. Senderowitz,

explaining that both subpoenas were served earlier that day upon Mr. Kwon.  A copy of my

September 20, 2021 email to Mr. Henkin and Mr. Senderowitz is attached as **Exhibit 12.**

**IV.     Mr. Kwon's and Terraform's Refusal to Comply with the Subpoenas**

33.     On September 24, 2021, I followed up with Mr. Henkin and Mr. Senderowitz

regarding the status of the subpoenas served upon Mr. Kwon.  In response, Mr. Senderowitz

requested a "copy of the order entered pursuant to Rule 150(b) of the Rules of Practice by the

Commission authorizing personal service of the subpoenas upon Mr. Kwon."  A copy of the email exchange is attached as **Exhibit 13**.

34.     I emailed Mr. Senderowitz on September 28, 2021, and later that day over the phone, explained to Mr. Senderowitz that the subpoenas were properly served pursuant to Rule 150(d).  During the September 28 conversation, Mr. Senderowitz stated that he believed there was an issue with service of the subpoenas and stated that they would provide more information within a week regarding whether Terraform and Mr. Kwon would comply with the subpoenas.  A copy of the email exchange is also attached as **Exhibit 13**.

35.     On October 1, 2021, Mr. Henkin sent an email to Ms. Hitchins and me regarding the September 17, 2021 subpoenas.  Mr. Henkin stated he had "not made a determination regarding our views of whether service [of the subpoenas] was valid."  Nonetheless, Mr. Henkin requested that the return dates for the subpoenas be "temporarily suspend[ed]" so the parties could focus on a resolution of the SEC's investigation.  A copy of Mr. Henkin's October 1, 2021 email is attached as **Exhibit 14**.

36.     On October 7, 2021, Ms. Hitchins and I spoke again by telephone to Mr. Henkin and Mr. Senderowitz.  During the call, as part of discussions regarding a potential settlement that would be submitted to the Commission for approval, I offered to extend the return dates of the September 17, 2021 subpoenas, which required that Terraform and Mr. Kwon produce responsive documents by October 4, 2021 and that Mr. Kwon testify on October 27, 2021.  Specifically, I offered to extend the date for the start of the production of documents responsive to the subpoenas from October 4, 2021 to October 29, 2021 and the end of document production to be completed by November 30, 2021.  I also offered to delay Mr. Kwon's testimony from October 27, 2021 to December 15, 2021.  Mr. Senderowitz did not accept our offer to extend the

dates and instead stated that he did not believe that service of the subpoenas was proper.  I reiterated that service was proper upon Mr. Kwon and that, even if they contended it was not, the SEC also sent the subpoenas to Mr. Henkin and Mr. Senderowitz.  Mr. Senderowitz responded that even if I served counsel properly, that could not effect jurisdiction over Mr. Kwon and Terraform.  I responded that we were amenable to allowing Terraform to focus on the settlement discussions, requesting that Terraform and Mr. Kwon state whether they were willing to continue to negotiate settlement by October 22, 2021.  Mr. Henkin indicated that they could respond by or before October 22.  I then emailed Mr. Henkin and Mr. Senderowitz to confirm the SEC was willing to extend the return dates of the subpoenas as discussed by telephone earlier in the day.  A copy of my October 7, 2021 email is attached as **Exhibit 15.**

37.     On October 19, 2021, I followed up with Mr. Henkin and Mr. Senderowitz by email in regards to the settlement negotiations, but received no reply.  A copy of my October 19, 2021 email is attached as **Exhibit 16.**

38.     On the evening of October 22, 2021, I received an email from Mr. Senderowitz attaching a complaint against the SEC in relation to the subpoenas served on Mr. Kwon and Terraform.  A copy of Mr. Senderowitz's email is attached as **Exhibit 17.**

39.     On November 1, 2021, I emailed Mr. Henkin and Mr. Senderowitz to inquire whether Terraform and Mr. Kwon intended to comply with the September 17, 2021 subpoenas.  I pointed out that Terraform and Mr. Kwon had failed to produce any documents to the SEC by October 29, 2021, the extended return date offered by the SEC for documents responsive to the subpoenas.  I requested that Mr. Henkin and Mr. Senderowitz indicate whether Terraform and Mr. Kwon intended to comply with the documents subpoenas and whether Mr. Kwon accepted our offer to reschedule his testimony for December 15, 2021.  I further stated that the

Commission may seek appropriate remedies if Terraform and Mr. Kwon continued to not comply with the subpoenas.  Mr. Henkin responded to my inquiry on November 4, 2021, stating by email that the subpoenas were not "validly issued."  A copy of the email exchange is attached as **Exhibit 18**.

40.     Neither Terraform nor Mr. Kwon have produced a single document responsive to the September 17, 2021 subpoenas nor the July 22, 2021 document request and Mr. Kwon has not provided testimony pursuant to the subpoena.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information and belief.

November 12, 2021

Roger J. Landsman

16