LC3VSECC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

U.S. SECURITIES AND EXCHANGE
COMMISSION,

                    Petitioner,

              v.                          21 MC 810 (JPO)

TERRAFORM LABS PTE, LTD.,
DO KWON,

                    Respondents.          Remote Teleconference

------------------------------x

                                          New York, N.Y.
                                          December 3, 2021
                                          2:10 p.m.

Before:

                    HON. J. PAUL OETKEN,

                                          District Judge

                         APPEARANCES

U.S. SECURITIES AND EXCHANGE COMMISSION
      Attorneys for Petitioner
BY:   JAMES P. CONNOR

DENTONS US LLP
      Attorneys for Respondents
BY:   DOUGLAS W. HENKIN

LC3VSECC

1              (Remote teleconference)

2              THE COURT:  Good afternoon, everyone.

3              This is Judge Oetken.

4              Mr. Hampton will call the case.

5              (Case called)

6              THE DEPUTY CLERK:  Starting with the government, SEC,

7       counsel, please state your name for the record.

8              MR. CONNOR:  Yes.  This is James Connor for the

9       Securities and Exchange Commission.  Good afternoon.

10             THE COURT:  Good afternoon.

11             THE DEPUTY CLERK:  And for respondent?

12             MR. HENKIN:  This is Douglas Henkin with Dentons U.S.

13      LLP for Terraform Labs and Mr. Kwon.

14             Good afternoon, your Honor.

15             THE COURT:  Good afternoon.

16             Again, this is Judge Oetken.

17             I believe we do have a court reporter on the line, so

18      please state your names before you speak.

19             I scheduled this call in the miscellaneous matter

20      number 21 MC 810, which was filed on November 12th.  And I

21      accepted that miscellaneous case as related to an earlier civil

22      action filed on October 22nd, numbered 21 CV 8701.  And we're

23      really, I think, just addressing the procedural issues raised

24      in the parties' letters on the docket in the miscellaneous case

25      that had been filed at docket numbers 10, 11, 12, 13.  And I

LC3VSECC

1   don't think I need to decide whether there's any formal need to

2   consolidate or anything relating to that; it's obviously

3   related.

4           My initial view, just as a procedural matter, is that

5   I don't know that it matters which case proceeds.  It seems to

6   me that the civil action is fundamentally a challenge to the

7   subpoena that was physically served or purported to be served

8   on Mr. Kwon, both in his individual capacity and as CEO of

9   Terraform Labs.

10          It seems to me that it probably makes sense to have

11  this resolved as the SEC suggests in the context of the

12  petition to enforce the administrative subpoena.  And I believe

13  any argument as to service or arbitrary and capricious issues

14  as alleged in the civil action can be raised in the context of

15  its objection to the enforcement of subpoena or motion to quash

16  the subpoena.  That's my initial view.

17          It seems to me the only thing we really need to decide

18  is setting a date for the respondents to file a response to the

19  brief that the SEC has filed.  But before I resolve that, I

20  want to give you a chance to address anything I might have

21  missed in that regard.

22          I'll start with Mr. Connor for the SEC.

23          MR. CONNOR:  Yes, your Honor, and thank you.

24          We think that's exactly right.  We think that the

25  validity of the SEC subpoena should be addressed in the context

LC3VSECC

1    of the subpoena enforcement action.  We noted in our letters

2    that the subpoena enforcement action, and not the civil action,

3    is the widely recognized and exclusive procedure for resolving

4    the validity of SEC subpoenas.  We pointed to the *Sprecher v.*

5    *Graber* case from the Second Circuit, 716 F.2d 968.

6           The only other point I'll make, your Honor, is that

7    respondents will have every opportunity, as your Honor

8    mentioned, to raise all the challenges that they raised in the

9    civil action.  One of the factors that the Court looks at in

10   deciding to enforce the subpoenas is whether the administrative

11   steps required have been followed.  So that is one of the

12   factors that courts consider in deciding whether to enforce the

13   subpoenas.

14          So we think they'll be given every opportunity to

15   raise any challenge they have there.  And we also think that in

16   addition to being the proper vehicle under case law, there are

17   also distinct advantages to the subpoena enforcement action, in

18   that they are typically resolved much quicker than civil

19   actions.  Courts in this district typically resolve SEC

20   applications to enforce subpoenas within approximately 30 days.

21   And for precedent there, I could point the Court to *SEC v.*

22   *Fauth*, which is a recently decided case; and also *SEC v.*

23   *Carter*, which was before Judge Gardephe.  And *SEC v. Fauth* was

24   before Judge Carter.

25          THE COURT:  How do you spell that?

LC3VSECC

1          MR. CONNOR:  It's F-A-U-T-H.  And that was an action

2     that was filed on October 20th, 2021, and it was recently

3     resolved on November 12th, 2021.

4          THE COURT:  Okay.  Mr. Henkin?

5          MR. HENKIN:  Thank you, your Honor.

6          As you can imagine, we disagree with what Mr. Connor

7     just asserted.  And I think the difference here fundamentally

8     is that in all of the cases that the SEC has relied on, there

9     was -- these were fundamentally cases that were challenging the

10    subpoenas.  For example, *Fauth* was opposing the subpoena on the

11    grounds of undue burden due to the target's poor health; *Carter*

12    was opposing the subpoena on the grounds of undue burden

13    because the SEC sought testimony for an unlimited number of

14    days rather than several hours.

15          There are other cases that are quite different.  The

16    *Sprecher* case, for example, was a plaintiff bringing an action

17    to quash an administrative subpoena on the grounds that it

18    constituted harassment.  And *Sprecher* didn't hold that

19    sovereign immunity bars actions against the SEC under the APA

20    for violating its own rules.

21          In contrast, the main issue here and the reason that

22    we have suggested the methodology that we did, is that there is

23    a core issue here about whether the SEC complied in the first

24    instance with Rule 150(b).  And that's an issue that can be

25    addressed without any discovery and very quickly with regard to

LC3VSECC

1   briefing.  Because if the SEC didn't comply with Rule 150(b),

2   then the subpoenas that were issued here, which were actually

3   issued to Mr. Kwon in his individual capacity and purportedly

4   to Terraform Labs via Mr. Kwon, just were not lawful in the

5   first instance.  And so that would make both cases go away.

6          Our suggestion was to address the 150(b) issue on its

7   own; because if we have to respond to the SEC's entire brief,

8   then, as opposed to addressing Rule 150(b) compliance first,

9   then we need to get into questions regarding whether the

10   subpoena seeks new information relevant to an investigation

11   with a proper purpose, whether it's unreasonable or was issued

12   in bad faith and whether compliance is unnecessarily

13   burdensome.  It also requires us to get into questions of

14   personal jurisdiction; whereas if we go directly to the 150(b)

15   issue and deal with it quickly, which I think we can, we made a

16   suggestion as to a schedule, but I'm more than willing to

17   discuss a different schedule.  That may resolve everything very

18   quickly.

19          THE COURT:  Let me try to understand.

20          When you say the 150(b) issue, it's the issue that the

21   SEC knew that these respondents had counsel and nevertheless

22   served Mr. Kwon or purported to serve Mr. Kwon when he was in

23   New York for this conference.  Is that the issue you're talking

24   about?

25          MR. HENKIN:  That's the issue.

LC3VSECC

1          And the key part of it that really makes this, I

2     think, relatively quick to deal with is that under those

3     circumstances, the commission is required to get an order

4     permitting it to do what it did.  And we know from the record

5     that the SEC did not get that order here.

6          THE COURT:  But at the time -- I think the rule says

7     that you have to -- that that rule applies if the lawyer has

8     filed a notice of appearance.  But you hadn't filed a notice of

9     appearance at that point, had you?

10         MR. HENKIN:  Well, actually, that's not the SEC's

11    view.  The SEC has itself in litigation taken the position that

12    the notice that it had from us here sufficed under Rule 150(b).

13    And it actually took that position in a case called *SEC v.*

14    *Deloitte Touche Tohmatsu*, which was a District of D.C. case in

15    2013.  So the SEC actually agrees with us that we had given

16    them enough notice to bring 150(b) into effect and require the

17    order.

18         THE COURT:  Okay.  But if that applied, wouldn't it be

19    the case that they just had to serve your clients through

20    counsel, which they did within a day or two?

21         MR. HENKIN:  No.  Actually what's interesting, if you

22    look at the record, your Honor, is that they -- the SEC

23    contends that the service was completed on Mr. Kwon and they

24    sent counsel courtesy copies.  They didn't ask to serve through

25    counsel.

LC3VSECC

1          Obviously, as your Honor knows, service through

2    counsel -- counsel are not required to accept service.  So the

3    real question comes down to was the service on Mr. Kwon valid

4    in the first instance.  And if they didn't have an order that

5    allowed them to do that, then that service was not valid.  The

6    subpoenas were not valid.

7          THE COURT:  You're saying under this rule that they

8    had to get a vote of the actual Securities and Exchange

9    Commission to serve Mr. Kwon?

10          MR. HENKIN:  They had to get an order from the

11    commission, that's right.  That's what the rule says.

12          THE COURT:  How does that square with the other SEC

13    rule cited in the SEC's brief that very straightforwardly says

14    that an administrative subpoena can be served by physical

15    service on the recipient of the subpoena?

16          MR. HENKIN:  The way you go through it, your Honor, is

17    you start with Rule 203.8, which says, Service of subpoenas

18    issued in formal investigative proceedings shall be effected in

19    the manner prescribed by Rule 232(c).  Then you go to Rule

20    232(c), which says, The provisions of this paragraph shall

21    apply to the issuance of subpoenas for the purposes of

22    investigations; and says that service shall be made pursuant to

23    the provisions of Rule 150(b) through (d).  And then Rule

24    150(b) says, Upon a person represented by counsel whenever

25    service is required to be made upon a person represented by

LC3VSECC

counsel who's filed a notice of appearance, service shall be

made pursuant to paragraph C upon counsel, unless service upon

the person represented is ordered by the commission or the

hearing officer.  That's the key part.

        And when you go through it in that -- when you go

through the rules in that order and it becomes clear, as it is

here, that the commission didn't have the "ordered by the

commission" part, the service is invalid.

        THE COURT:  All right.

        Mr. Connor, would you like to respond briefly?

        MR. CONNOR:  Yes, I would.

        Your Honor, we believe that Section 150(d), which

specifically says that service of an investigative subpoena may

be made by delivering a copy of the filing, and then defines

"delivery" as personal service, handing a copy to the person or

party to be served, that that resolves the question.

        Even if that didn't resolve the question, which,

again, we think it does, if you look at Section 150(b), it

states, Whenever service is required to be made upon a person

represented by counsel who has filed a notice of appearance --

respondents' counsel did not file a notice of appearance in

this case.  Even had they filed a notice of appearance though,

the key point is that it says, If they had filed a notice of

appearance, service shall be made pursuant to paragraph C of

this section.  Paragraph C of that section specifically allows

LC3VSECC

1    for electronic service.  And the SEC sent a copy of the

2    subpoenas the same day on which they were served electronically

3    to respondents' counsel.  So any way you look at it, whether

4    you look at it under 150(b) or 150(d), service here was

5    unquestionably proper.

6        THE COURT:  But Mr. Henkin points out that the

7    courtesy copy sent to counsel could not constitute service in

8    the technical sense because it was just a courtesy copy, and

9    they wouldn't have accepted it if it were Service.

10       MR. CONNOR:  Your Honor, whether or not they accepted

11   it or not, the rule provides that whenever -- and again, we're

12   in the world in which respondents' counsel had filed a notice

13   of appearance, which they didn't do.  But had they done it,

14   then the SEC would have been entitled to effect service

15   electronically.  And so whether or not respondents' counsel

16   accepted it or not, the service is effective when it's sent,

17   when it's delivered electronically.  So whether the SEC

18   entitled it a courtesy copy or said it was service, the reality

19   is that the email was sent, it was electronically delivered,

20   and that would have been proper service had respondents'

21   counsel filed a notice of appearance.

22       We don't agree with respondents, heads I win, tails,

23   you lose, attempt to look at these rules.  The reality is

24   Mr. Kwon was personally served with the subpoena.  His counsel

25   was served with -- I shouldn't say "served," was sent the

LC3VSECC

1    subpoena electronically.  There's just no question that under

2    any way you look at it, that both his counsel and himself have

3    received the subpoenas and they should be enforced.

4              And again, your Honor, I think, sort of, this colloquy

5    that we're having about whether the administrative steps have

6    been followed, that's exactly what we think is the purpose of

7    the application to enforce the subpoena.  Again, under *United*

8    *States v. Powell*, which is the Supreme Court case that lays out

9    the factors that courts look at in deciding whether and to

10   enforce the subpoena, the last factor is whether the

11   administrative steps have been followed.

12             Respondents' counsel apparently believe the

13   administrative steps have not been followed.  But they should

14   be given an opportunity to respond to our application; we will

15   file a reply; and then the Court can resolve the issue.  But

16   this is the context in which this issue should be resolved.  It

17   certainly should not be resolved in a collateral civil action,

18   because it's just not proper under Second Circuit precedent.

19             THE COURT:  I agree with that.

20             This will be resolved through the miscellaneous case,

21   because it's -- I'm not hearing anything that would prevent any

22   issue that respondents wanted raised in the context of the

23   subpoena enforcement proceeding.  Sounds like Mr. Henkin would

24   like an opportunity to raise this narrow issue first.  And I

25   could do that in the subpoena enforcement matter, the rule --

LC3VSECC

1    the SEC rule issue, but I'm not inclined to do that because,

2    you know, you've had this thing for several weeks; I don't know

3    why you can't respond to the government's brief -- sorry, the

4    SEC's brief that was filed on November 12th.

5          So I'll give you two weeks from today to file your

6    response to the brief; and then two weeks for any reply.

7          MR. CONNOR:  Your Honor, I think we would only need a

8    week for a reply.

9          THE COURT:  Was that Mr. Connor?

10         MR. CONNOR:  Yes.  I'm sorry, your Honor.  Yes.

11         THE COURT:  Okay.  You could file your reply within a

12   week.  And then I'll either get you on the phone for oral

13   argument or decide it on the papers.

14         Anything else for today from Mr. Connor?

15         MR. CONNOR:  No.  Thank you, your Honor.

16         THE COURT:  Anything else for Mr. Henkin?

17         MR. HENKIN:  Your Honor, I will say that we will be

18   requesting oral argument, because I think that there are issues

19   that are raised here that will benefit from the Court hearing

20   argument beyond what's in the papers.

21         THE COURT:  Okay.  That's fine.

22         You could just note that in your filing.

23         MR. HENKIN:  Okay.  Thank you, your Honor.

24         THE COURT:  All right.  Thanks, everyone.

25         Have a good weekend.  We're adjourned.  (Adjourned)