**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 1:21-mc-00810 (JPO) |
| Applicant, | |
| v. | Hon. J. Paul Oetken |
| TERRAFORM LABS PTE, LTD. and DO KWON, | Hon. Barbara C. Moses |
| Respondents. | |

**RESPONDENTS' OPPOSITION TO U.S. SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER REQUIRING COMPLIANCE WITH SUBPOENAS**

**ORAL ARGUMENT REQUESTED**

Douglas W. Henkin
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6832
Facsimile: (212) 768-6800

Nicholas W. Petts (*pro hac vice* forthcoming)
1900 K Street NW
Washington, D.C. 20006
Telephone: (202) 496-7356
Facsimile: (202) 496-7756

*Counsel for Respondents Do Kwon*
*and Terraform Labs PTE, Ltd.*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTS ............................................................................................................................... 4

ARGUMENT ..................................................................................................................... 9

I.     THE COURT SHOULD DENY ENFORCEMENT OF THE SUBPOENA
DIRECTED TO MR. KWON .................................................................................. 9

        A.     The SEC Failed to Comply with the Required Administrative Steps
Because it Served Mr. Kwon Personally Despite Knowing He Was
Represented by Counsel ............................................................................ 9

        B.     To the Extent the SEC Claims to Have Served Counsel for Mr. Kwon, The
Court Lacks Jurisdiction over Mr. Kwon Because He Is Not a United
States Resident and Has No Case-Related Contacts with the U.S. ....................... 15

II.    THE COURT SHOULD DENY ENFORCEMENT OF THE SUBPOENA
DIRECTED TO TFL ............................................................................................. 17

        A.     TFL is Not Subject to General Jurisdiction ......................................... 17

        B.     TFL is Not Subject to Specific Jurisdiction ......................................... 18

CONCLUSION ................................................................................................................ 21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alibaba Group Holding Limited v. Alibabacoin Foundation*,
   No. 18-CV-2897 (JPO), 2018 WL 2022626 (S.D.N.Y. April 30, 2018) ................................20

*Balestra v. ATBCOIN LLC*,
   380 F.Supp.3d 340 (S.D.N.Y. 2019) ....................................................................................21

*Baxter v. United States*,
   2016 WL 468034 (N.D.Cal. 2016) .........................................................................................9

*Blockchange Ventures I GP, LLC. v. Blockchange, Inc.*,
   No. 20-CV-6866 (AKH), 2021 WL 308277 (S.D.N.Y. Jan. 29, 2021) ..................................18

*Capitol Records, LLC v. VideoEgg, Inc.*,
   611 F.Supp.2d 349 (S.D.N.Y. 2009) ....................................................................................20

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ..............................................................................................................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ..............................................................................................................17

*Gucci America, Inc. v. Weixing Li*,
   135 F.Supp.3d 87 (S.D.N.Y. 2015) ......................................................................................18

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ..............................................................................................................16

*Martinez v. Aero Caribbean*,
   764 F.3d 1062 (9th Cir. 2014) ..............................................................................................17

*Perez v. Mortg. Bankers Ass'n*,
   575 U.S. 92 (2015) ................................................................................................................12

*RNR Enters., Inc. v. SEC*,
   122 F.3d 93 (2d Cir.1997) .......................................................................................................9

*Royalty Network v. Dishant.com*,
   638 F. Supp. 2d 410 (S.D.N.Y. 2009) ..................................................................................20

*Saint Tropez Inc. v. Ningbo Maywood Industry and Trade Co., Ltd.*,
   No. 13 CIV. 5230 NRB, 2014 WL 3512807 (S.D.N.Y. July 16, 2014) ................................17

*Santos v. State Farm Fire and Cas. Co.*,
   902 F.2d 1092 (2d Cir. 1990) .......................................................................... 15

*SEC v. Sharef*,
   924 F.Supp.2d 539 (S.D.N.Y. 2013) .............................................................. 16

*SPV OSUS Ltd. v. UBS AG*,
   114 F.Supp.3d 161 (S.D.N.Y. 2015) ........................................................ 18, 21

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) .......................................................................................... 13

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
   916 F.3d 143 (2d Cir. 2019) ........................................................................... 16

*U.S. Securities & Exchange Commission v. Deloitte Touche Tohmatsu, CPA LTD*
   No. 11 Misc. 512 GK/DAR (D.D.C. May 30, 2013) .................................. 12, 14

*U.S. v. Powell*,
   379 U.S. 48 (1964) ...................................................................................... 9, 15

*Estate of Ungar v. Palestinian Authority*,
   400 F.Supp.2d 541 (S.D.N.Y. 2005) .............................................................. 17

*Velesaca v. Decker*,
   458 F.Supp.3d 224 (S.D.N.Y. 2020) .............................................................. 14

*Zherka v. Ryan*,
   52 F. Supp. 3d 571 (S.D.N.Y. 2014) .............................................................. 15

**Statutes**

15 United States Code
   § 77s(c) ............................................................................................................. 5
   § 78aa ............................................................................................................. 15

28 United States Code § 530(B)(a) ..................................................................... 14

**Rules and Regulations**

17 Code of Federal Regulations
    § 201.100(b)(1) ...................................................................................9
    § 201.101(a)(9)(i) .............................................................................12
    § 201.102.........................................................................................10
    § 201.150......................................................................................9, 12
    § 201.150(b) ............................................................................. *passim*
    § 201.150(c) ...............................................................................12, 13
    § 201.150(d) ..............................................................................12, 13
    § 201.232(c) ...........................................................................9, 11, 12
    § 203.8.............................................................................................9

**Other Authorities**

Rules of Practice, 60 Fed. Reg. 32738, 32751 (June 23, 1995).....................................................10

Amendments to the Commission's Rules of Practice, 85 Fed. Reg. 86464, 86473
    (Dec. 30, 2020) ........................................................................................12

American Bar Association Model Rule of Professional Conduct Rule 4.2(a) ............................14

Individual Rules and Practices in Civil Cases, United States District Court,
    Southern District of New York § 4(B)......................................................................20

International Organization of Securities Commissions, Enhanced Multilateral
    Memorandum of Understanding Concerning Consultation and Cooperation
    and the Exchange of Information, Article 3(2)(b)-(c) ...........................................2

United States Securities and Exchange Commission Enforcement Manual, 2015
    WL 10459618 (June 4, 2015) ...................................................................12

United States Securities and Exchange Commission Enforcement Manual §
    3.3.5.3.3..............................................................................................14

Respondents Terraform Labs PTE, Ltd. ("TFL") and Do Kwon respectfully submit this memorandum of law in opposition to the United States Securities and Exchange Commission ("SEC")'s Application For An Order To Show Cause And For An Order Requiring Compliance With Subpoenas. For the reasons set forth below, and in the accompanying Declarations of Han Chang Joon ("Joon Decl.") and Stephen J. Senderowitz ("Senderowitz Decl.") and the exhibits thereto, Respondents respectfully request that the Court deny the SEC's application to enforce its administrative subpoenas in its entirety.

## INTRODUCTION

The core issue in this proceeding is that the SEC violated its Rules of Practice, the Administrative Procedure Act, and basic legal ethics in issuing and attempting to serve subpoenas on entities over which it lacks jurisdiction and which it knew are represented by counsel.

TFL is a technology firm at the forefront of developing decentralized finance applications such as the Mirror Protocol and the associated MIR governance tokens. Mr. Kwon is TFL's chief executive officer. In May 2021, the SEC staff began investigating whether mAssets (a type of asset created by the Mirror Protocol community using the Mirror Protocol, not by TFL) or MIR tokens are securities[1] and whether to recommend an enforcement action for not registering them with the SEC (there is no "issuer" of these assets—they are minted by Mirror Protocol smart contracts pursuant to governance decisions made by the Mirror Protocol community).

The SEC lacks jurisdiction over TFL and Mr. Kwon. TFL is incorporated under the laws of Singapore and maintains corporate offices in Singapore and South Korea. Mr. Kwon is a citizen of South Korea and resident of Singapore. By statute, the SEC cannot serve

---

[1]        They are not, but that is not an issue the Court needs to address at this time.

1

administrative subpoenas outside the United States.  The SEC is, however, permitted to obtain

information through accepted international protocols, such as the International Organization of

Securities Commissions' (IOSCO) Enhanced Multilateral Memorandum of Understanding.[2]  The

securities regulators of the United States, Singapore, and Korea are IOSCO signatories.

The SEC staff contacted Mr. Kwon and TFL in May 2021 and asked them to cooperate

voluntarily with the SEC's investigation.  Neither Mr. Kwon nor TFL were legally obligated to

do so.  However, while maintaining that the SEC lacked jurisdiction over them, Mr. Kwon and

TFL agreed to provide voluntary assistance to the SEC.  From May to September, counsel for

Mr. Kwon and TFL cooperated with the SEC staff in its investigation.  Counsel and the SEC

reached a proffer agreement under which the SEC staff interviewed Mr. Kwon for five hours.

The SEC staff then submitted voluntary document requests to counsel.  Although the requests

were overbroad and reflected a lack of understanding of topics discussed during the five-hour

interview with Mr. Kwon, counsel provided what responsive information it could (the vast

majority of which was publicly available, one of the key aspects of open-source decentralized

blockchain software programs like the Mirror Protocol that the SEC staff did not seem to

understand) and invited further discussion.

In September, amid negotiations with counsel for Mr. Kwon and TFL, the SEC

overreached.  From monitoring Mr. Kwon's Twitter feed, the SEC staff learned that he would be

---

[2]     Under IOSCO, signatory nations have pledged to offer one another the "Fullest
        Assistance Permissible," including "obtaining and providing Information from any
        Persons regarding the matters set forth in the request" and "compelling a Person's
        physical attendance to take or, where permissible, compel that Person's statement or
        testimony under oath."  EMMoU, Art. 3(2)(b)-(c).  Not surprisingly, what is
        "permissible" depends on the local law of each signatory.  An overview of the SEC's
        cooperative arrangements with foreign regulators, including IOSCO and bilateral
        compacts with individual nations, can be found on the Commission's website, at
        https://www.sec.gov/about/offices/oia/oia_coopfactsheet.htm.

traveling to the United States to attend an industry conference in New York.  They saw this as a chance to "tag" Mr. Kwon in an attempt to secure jurisdiction over him in a way that provided more leverage than voluntary cooperation requests, by trying to serve him personally while in the country.  On September 20, the SEC staff had a process server hand Mr. Kwon two investigative subpoenas, one directed to Mr. Kwon and the other to TFL.  Afterward, the SEC staff emailed copies of the subpoenas to counsel and advised counsel that they had "served" Mr. Kwon "personally."

The Court should deny enforcement of the subpoenas because the SEC unequivocally violated its rules governing the issuance and service of administrative subpoenas.  Rule 150(b) of the SEC's Rules of Practice prohibits the SEC staff from serving investigative subpoenas on an individual who is represented by counsel without having secured special permission from the Commission to do so, which was not done.  In such circumstances, service could only be made by asking counsel to accept service, and, in this instance, counsel would not have been required to accept service on behalf of Mr. Kwon and TFL (among other reasons because the SEC lacks jurisdiction over them).

Rule 150(b) reflects the basic principle of legal ethics that a lawyer in a case should never directly contact a party-opponent he knows to be represented by counsel, unless authorized by law.  The principle reflected in Rule 150(b) is so important that exceptions can be granted only by the Commission itself, which must issue an order authorizing service directly on a person represented by counsel.  The SEC staff never obtained such an order here.

The SEC essentially claims the equivalent of harmless error on the theory that it "served" TFL and Mr. Kwon's counsel with courtesy copies after the fact.  This ignores the function of securing jurisdiction, which the SEC had not previously done, that lawful service addresses.

Sending counsel courtesy copies is only relevant if the personal service itself was effective—it does not secure personal jurisdiction.

The Court should also deny enforcement of the subpoena directed to TFL. TFL is not subject to general jurisdiction in the U.S. and lacks the case-related contacts with the U.S. needed for specific jurisdiction. It is black-letter law that trying to serve TFL by handing a subpoena to Mr. Kwon was not effective service.

The SEC's application should be denied in its entirety.

## FACTS

TFL is a private company developing digital infrastructure for the next generation of decentralized financial applications. Joon Decl. ¶¶ 3, 5. It is incorporated under the laws of the Republic of Singapore and has its principal place of business at 22 Cross Street #02-103 Singapore 048421. Joon Decl. ¶ 3. TFL's CEO, Mr. Kwon, is a citizen of South Korea and a resident of Singapore. Joon Decl. ¶ 4.

The Mirror Protocol, which TFL developed, is a decentralized finance protocol built on Terra, a decentralized and open-source public blockchain network which TFL also developed. Joon Decl. ¶ 5. Because both the Mirror Protocol and the Terra blockchain it runs on are decentralized protocols, neither TFL nor Mr. Kwon control them. Joon Decl. ¶ 7. The Mirror Protocol allows users to create or "mint" synthetic asset tokens that mirror the value of other intangible or tangible assets. Joon Decl. ¶ 5. To mint a mirrored asset or "mAsset," a user submits to the protocol a form of digital collateral (either a stablecoin or a different mAsset) in an amount set by the smart contracts that underlie the protocol. Joon Decl. ¶ 6. Minting can be done through a user interface created by TFL or through multiple other user interfaces created by third parties. Joon Decl. ¶ 7.

The Mirror Protocol also supports native governance tokens called MIR tokens.  *Id.*
They allow holders to vote on governance proposals, including the kinds of mAssets that can be
minted.  Joon Decl. ⁋ 6.  MIR tokens are granted from the Mirror Protocol community pool for
developing valuable Mirror projects and participating in the protocol's governance.  Joon Decl. ⁋
7.

Neither mAssets nor MIR tokens can be purchased from TFL.  Once minted, mAssets
and MIR tokens can be traded on blockchains such as the Terra blockchain (but not only on the
Terra blockchain).  *Id.*

On May 24, 2021, attorneys from the SEC's Division of Enforcement contacted Mr.
Kwon by email.  Senderowitz Decl. ⁋ 5.  Staff attorneys Roger Landsman and Kathleen Hitchens
stated that they were investigating the Mirror Protocol.  *Id.*  Lacking a subpoena, which the SEC
can only serve in the United States,[3] they asked Mr. Kwon for his voluntary cooperation.  *Id.*

Mr. Kwon obliged.  He and TFL retained Dentons US LLP to represent them in
connection with the SEC's investigation and facilitate cooperation with the SEC staff.
Senderowitz Decl. ⁋ 6.  On May 27, 2021, Dentons attorney Stephen Senderowitz called Mr.
Landsman and informed him that he and Douglas Henkin, also a Dentons partner, represented
TFL and Mr. Kwon.  *Id.*  Mr. Landsman expressed his desire to learn more about the business
and technical aspects of the Mirror Protocol and related tokens.  Senderowitz Decl. ⁋ 7.  During
several conversations, Mr. Senderowitz and Mr. Henkin made clear that TFL and Mr. Kwon
were beyond the SEC's jurisdiction but conveyed their willingness to cooperate on a voluntary
basis.  Senderowitz Decl. ⁋⁋ 7–8.

---

[3]     *See* 15 U.S.C. § 77s(c) (authorizing officers of the Commission to "subpoena witnesses,
take evidence, and require the production of … documents … *from any place in the
United States or any Territory*") (emphasis added).

After multiple conversations between the SEC staff and Messrs. Senderowitz and Henkin, the parties reached a negotiated proffer agreement. *Id.* Mr. Kwon agreed to be interviewed by the SEC for approximately three hours, and the SEC agreed that Mr. Kwon's statements could not directly be used against him or TFL in any subsequent enforcement action, except for limited purposes. *Id.* The SEC drafted the proffer agreement, which identified Dentons as "counsel" for Mr. Kwon and TFL. *Id.*

On July 8, 2021, the SEC staff interviewed Mr. Kwon for approximately *five* hours. Senderowitz Decl. ❡ 9. The interview was conducted via WebEx, because Mr. Kwon resided in South Korea (he now lives in Singapore). *Id.* Mr. Kwon was represented by Mr. Senderowitz and Mr. Henkin during the interview. *Id.* Questioning focused on the Mirror Protocol's creation, implementation, functionality, and operations, and TFL's past and current involvement with the Mirror Protocol. *Id.* The topics covered included, but were not limited to, the Mirror Protocol's creation, implementation, functionality, and operations; whether TFL receives income from the minting of or transactions in mAssets; Mr. Kwon's ownership of mAssets or MIR tokens;[4] and where mAssets trade. *Id.*

The interview lasted five hours, two hours longer than what was agreed. Mr. Kwon fully cooperated and answered all of the SEC's questions to the best of his ability except for those few questions that went beyond the scope of what Dentons understood the interview was to cover. Senderowitz Decl. ❡ 10. When the interview concluded, Ms. Hitchins and Mr. Landsman thanked Mr. Kwon for his cooperation, for extending the interview without objection, and for providing useful information in response to their questions. Senderowitz Decl. ¶ 11.

---

[4]   Mr. Kwon voluntarily showed his digital wallet to the SEC staff during the interview; it contained — in total — $155.46 of four mAssets and $10,000 worth of MIR tokens (at the time the value of all outstanding MIR tokens was $283 million).

On July 22, 2021, the SEC staff contacted Dentons to ask that Mr. Kwon and TFL agree to produce certain documents.  Senderowitz Decl. ⁋ 12.  The SEC's voluntary document requests sought records that were unavailable and were otherwise so broad and/or defective that to the extent responsive documents might exist, the requests had to be narrowed and clarified.  *Id.*  On July 28, Dentons and the SEC staff discussed the issues with the requests and the SEC staff requested that Dentons sets forth their position as to each request in writing.  On August 17, Dentons produced written responses to the SEC's voluntary document requests and invited further discussion.  Senderowitz Decl. ⁋ 14.  Importantly,  certain of the requested documents were publicly available (for example on Github), a fact explained to the SEC staff.  *Id.*

On September 15, 2021, the SEC staff advised Dentons that, despite the SEC not having concluded that any violations of U.S. securities law had occurred, any potential resolution of the formal order of investigation would have to be accomplished by means of an enforcement action.  Senderowitz Decl. ⁋ 16.  Mr. Senderowitz disagreed that an enforcement action was necessary, and suggested the SEC should decline to bring such an action in exchange for cooperation by TFL and Mr. Kwon.  Senderowitz Decl. ⁋ 17.

On September 17, 2021, Mr. Senderowitz called Mr. Landsman.  *Id.*  Mr. Senderowitz suggested the parties table for now the issue of whether an enforcement action was necessary or appropriate but continue to explore what remedial actions the SEC wanted TFL to perform and determine if such actions were feasible.  *Id.*[5]

During the September 17 call, Mr. Landsman made no mention to Mr. Senderowitz of the subpoenas Mr. Landsman had signed earlier that morning for TFL and Mr. Kwon.  Senderowitz

---

[5]     During discussions on September 28, the SEC staff generally suggested that one remedial act could be the registration of mAssets with the Commission.  However, as Dentons explained, mAssets are not "issued" by TFL or Mr. Kwon.  Senderowitz Decl. ⁋⁋ 22–23.

Decl. ¶ 17.  Indeed, despite his steady engagement with Dentons over the course of many weeks, Mr. Landsman never indicated any intention to issue subpoenas.  *Id.*

On September 20, 2021, Mr. Kwon was in New York to attend "Mainnet 2021," a cryptocurrency summit held at the Marriott Marquis hotel.  Senderowitz Decl. ¶ 18.  As he exited an escalator on his way to participate in a panel discussion that was starting minutes later,[6] Mr. Kwon was approached by a process server and handed an envelope containing two investigative subpoenas.  Senderowitz Decl. ¶ 18.  The SEC demanded production of documents by TFL and Mr. Kwon and in-person testimony by Mr. Kwon at its headquarters in Washington, D.C. in connection with the Mirror Protocol investigation.  Senderowitz Decl. ¶ 19, Ex. 4.  Later that day, Mr. Landsman emailed copies of the subpoenas to Mr. Senderowitz and Mr. Henkin with a message that they had been "served this morning personally" on Mr. Kwon.  *Id.*  Notably, that email did not purport to have effected service by being sent to Dentons.  *Id.*

On September 26, 2021, Dentons emailed the SEC staff to request a copy of the order pursuant to Rule 150(b) that the staff was required to obtain from the SEC before attempting to personally serve an individual represented by counsel.  Senderowitz Decl. ¶ 21.  The SEC staff never produced such an order.

---

[6]     The discussion panel was entitled "The Multi-chain Future is Here" and was about interoperability between leading blockchains and various developments in cross-chain technology.

# ARGUMENT

## I.   THE COURT SHOULD DENY ENFORCEMENT OF THE SUBPOENA DIRECTED TO MR. KWON

### A.   The SEC Failed to Comply with the Required Administrative Steps Because it Tried to Serve Mr. Kwon Personally Despite Knowing He Was Represented by Counsel

Judicial enforcement of an administrative subpoena demands that the agency have complied with "the administrative steps required" to properly issue and serve it.  *RNR Enters., Inc. v. SEC*, 122 F.3d 93, 96 (2d Cir.1997) (citing *U.S. v. Powell*, 379 U.S. 48, 57-58 (1964)); *Baxter v. United States*, 2016 WL 468034, at *3 (N.D.Cal. 2016) ("The government having failed to show compliance with the administrative steps provided in the IRC, the Summons for 2011 cannot be enforced.").  Issuance and service of SEC subpoenas are governed by the SEC's Rules Relating to Investigations and Rules of Practice.[7]  The SEC plainly violated Rule of Practice 150(b) by attempting to serve the subpoenas on Mr. Kwon personally, rendering the subpoenas unenforceable.

The applicable rules are not complicated:

- Rule 8 of the Rules Relating to Investigations requires that "[s]ervice of subpoenas issued in formal investigative proceedings shall be effected in the manner prescribed by Rule 232(c) of the Commission's Rules of Practice."  17 C.F.R. § 203.8;

- Rule 232(c) confirms that "[t]he provisions of this paragraph (c) **shall apply to the issuance of subpoenas for purposes of investigations,**" and requires that such "[s]ervice shall be made pursuant to the provisions of § 201.150(b) through (d)."  *Id.* § 201.232(c) (emphasis added);

- And Rule 150(b) requires that "[w]henever service is required to be made upon a person represented by counsel who has filed a notice of appearance pursuant to § 201.102, service shall be made pursuant to paragraph (c) of this section upon

---

[7]     17 C.F.R. § 201.100(b)(1) (The Rules of Practice "do not apply to … Investigations *except where made specifically applicable by the Rules Relating to Investigations*.").

counsel, *unless service upon the person represented is ordered by the Commission … ." Id.* § 201.150 (emphasis added).[8]

There is no question that Mr. Kwon was represented by counsel in connection with the SEC's investigation when the SEC attempted to serve him on September 20, 2021.  Beginning in May 2021, when Dentons informed the SEC staff that it represented Mr. Kwon and TFL, Dentons cooperated with the SEC staff ***for four months*** in an effort to provide information for the SEC's investigation.[9]  Dentons attorneys negotiated a proffer agreement with the SEC—an agreement drafted by the SEC in which the SEC itself identified Dentons as TFL and Mr. Kwon's counsel.  Dentons attorneys were present at the SEC's interview of Mr. Kwon in July 2021.  The SEC staff sent their voluntary document requests for Mr. Kwon to Dentons, and Dentons prepared and sent back the written responses.  Rule 150(b) was therefore triggered and prohibited the SEC staff from attempting to serve Mr. Kwon personally without an order from the SEC.  And yet that is precisely what the SEC staff did.

The SEC does not dispute that Mr. Kwon was represented by counsel when it attempted to serve him directly.  The SEC does not dispute that it failed to obtain the requisite order authorizing service directly on Mr. Kwon.  Rather, it tries to argue that Rule 150(b) does not

---

[8]     The SEC's adopting release for Rule 150—the rule's legislative history—supports its plain meaning. *See* Rules of Practice 60 Fed. Reg. 32738, 32751 (June 23, 1995) ("One commenter objected to the provision in the proposed rule that would have allowed service directly upon a party where the party was represented by counsel.  In response, Rule 150(b) has been amended to clarify that service upon counsel by another party is required unless service upon the person represented is specifically ordered by the Commission or the hearing officer.").

[9]     When the SEC did not know that TFL and Mr. Kwon were represented by counsel, they communicated directly with Mr. Kwon.  As soon as the SEC learned that TFL and Mr. Kwon were represented by counsel, the SEC began communicating exclusively with counsel.  The SEC's conduct leaves no doubt that it recognized that counsel had appeared for TFL and Mr. Kwon.

apply to investigations.  The three arguments the SEC offers against the clear and plain reading

of its rules are meritless.

*First*, the SEC argues that it was not required to comply with Rule 150(b) because

Dentons "did not even file the notice of appearance" mentioned in the rule.  Application 14.[10]

But Dentons *did* appear in the Mirror Protocol investigation.  On May 27, 2021, Mr. Senderowitz

contacted Mr. Landsman, informed him that Dentons represented Mr. Kwon and TFL, and

provided his contact information.  No special form is needed under Rule 102 to make an

appearance in an investigation and trigger Rule 150(b)'s protections.  All Rule 102 requires is

that when a person appears in a representative capacity before the Commission, that person shall

file a written notice stating the name of the proceeding; the representative's name, business

address and telephone number; and the name and address of the person or persons represented.

The SEC lawyers received this information.[11]  Further, as the SEC itself explained in a prior

subpoena enforcement proceeding where it rejected the interpretation of Rule 150(b) it now tries

to rely on:

> It would elevate form over substance to require, in the context of an SEC
> *investigation*, that a formal 'notice of appearance' be entered in order for Rule
> 150(b) to be given effect.  As noted, an investigation often precedes and is distinct
> from an administrative proceeding.  Thus, in almost all cases requiring entry of a
> 'notice of appearance' would frustrate and render ineffective Rule 232(c)'s

---

[10]   Citations to "Application" are to the U.S. Securities And Exchange Commission's
Memorandum in Support of Application for an Order to Show Cause and For an Order
Requiring Compliance with Subpoenas (ECF No. 2).  Citations to "Landsman Decl." are
to the Declaration of Roger J. Landsman in Support of U.S. Securities And Exchange's
Application for an Order To Show Cause and For An Order Requiring Compliance with
Subpoenas (ECF No. 4).

[11]   There was no docket in the Mirror Protocol investigative proceeding where such a notice
could be physically filed.  The information concerning counsel representation was
conveyed to the SEC lawyers by Dentons telephonically and in written email
communications.

express reference to Rule 150(b), a result that any reasonable construction of the SEC's rules should avoid.[12]

Notwithstanding that it previously (correctly) stated that a formal "notice of appearance" is not required under Rule 150(b), the SEC's newly-proposed interpretation of Rule 150(b) would deny its protections to all individuals under investigation.  That cannot be right because Rule 232(c) makes clear that 150(b) applies to investigations.  And it also cannot be right because the SEC cannot use a litigation interpretation to amend a rule that has been adopted pursuant to notice and comment rulemaking.  *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015) ("[A]gencies [must] use the same procedures when they amend or repeal a rule as they used to issue the rule in the first instance.").  Again, the SEC was right the first time.  *See SEC v. Deloitte*, at 15 n.9 ("Rule 150(b) is reasonably construed to permit legal counsel to accept service after they appear in an investigative matter, *which Mr. Cox clearly did by informing SEC Staff that he represented DTTC regarding Longtop.*") (emphasis added).

Second, the SEC attempts to argue that Rule 150(b)'s use of "notice of appearance" *implies* that the rule does not apply to investigations, because "notices of appearances are filed in 'proceedings'" and "investigations … are not proceedings."  Application 14.  That argument fails for two reasons.  The conclusion contradicts Rule 232(c), which expressly provides that *investigative subpoenas* be served in accordance with 150(b).  And the premise is false—this investigation is indeed a proceeding.  Rule of Practice 101 defines "proceeding" broadly to include "any agency process initiated … [b]y an order instituting proceedings."  17 C.F.R. §

---

[12]   Securities & Exchange Commission's Reply Memorandum in Support of its Renewed Application for Order Requiring Compliance with Subpoena at 15 n.9., *U.S. Securities & Exchange Commission v. Deloitte Touche Tohmatsu, CPA LTD*, No. 11 Misc. 512 GK/DAR (D.D.C. May 30, 2013) ("*SEC v. Deloitte*"), ECF No. 66.

201.101(a)(9)(i).  This investigation was initiated by the Order of Investigation issued on May 7, 2021.

*Third*, the SEC makes the facile argument that subsection (d) of Rule 150 says that if service is to be made of an investigative subpoena, then one possible method of service is service on "the person required to be served," and that is what the SEC staff did here.  Application 15.  But that is *not* what happened here.  When an individual is represented by counsel, subsection (b) defines the "person required to be served" in subsection (d) as his *counsel*.[13]  Rule 232(c) says that Rule "150*(b)*-(d)" applies to investigative subpoenas, and it would render subsection (b) meaningless if subsection (d) were read to allow service of an investigative subpoena on an individual when he is represented by counsel.  *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (a rule should be so construed that, if it can be prevented, "no clause, sentence, or word shall be superfluous, void, or insignificant").  Subsection (b) only has meaning if it limits the "[a]dditional methods of service" otherwise available under subsection (d) and thus prohibits

---

[13]     Prior versions of Rule 150 confirm this relationship between the subsections.  Prior to its amendment in January of 2021, Rule 150 read as follows:

(b) Whenever service is required to be made upon a person represented by counsel who has filed a notice of appearance pursuant to § 201.102, service shall be made pursuant to paragraph (c) of this section upon counsel, unless service upon the person represented is ordered by the Commission or the hearing officer.

(c) How made. Service shall be made by delivering a copy of the filing. Delivery means:

(1) Personal service--handing a copy to the person required to be served….

*See, e.g.*, 2015 SEC ENF'T MANUAL, 2015 WL 10459618, at *34 (June 4, 2015) (quoting the then-current Rule 150(b)–(c)).  Service was thus to be made either upon the party, or upon counsel if the party was represented, by the then-exclusive method: "Delivery."  In 2015, the Commission "proposed to amend Rule 150(c) to require parties to serve each other electronically."  Amendments to the Commission's Rules of Practice, 85 Fed. Reg. 86464, 86473 (Dec. 30, 2020).  The current subsection (d) is simply a redesignation of prior subsection (c).  Subsections (c) and (d) do not identify "the person required to be served," subsection (b) does that.

personal service of an investigative subpoena in cases where an individual is represented by counsel, absent a specific order issued by the SEC.[14]

The SEC had it right in the *Deloitte* case when it stated: "Rule 150(b) does apply … in formal investigations." *SEC v. Deloitte* at 14. And Rule 150(b) is not a mere suggestion the SEC can disregard when it is expedient, it is a *rule* promulgated pursuant to notice-and-comment rulemaking that the SEC must follow unless it modifies the rule pursuant to the same administrative requirements: "[G]overnment agencies are generally required to follow their own regulations." *Velesaca v. Decker*, 458 F. Supp. 3d 224, 236 (S.D.N.Y. 2020) (quoting *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020)). When agencies fail to follow their rules, the Administrative Procedure Act empowers aggrieved parties to enforce compliance. *Id.* Hence, weeks before the SEC initiated this proceeding, TFL and Mr. Kwon filed suit in this Court against the SEC asserting claims asserting claims under the APA and the Fifth Amendment's Due Process clause and seeking a declaration that the subpoenas were invalid.[15]

It is particularly important to enforce Rule 150(b) because, among other things, it codifies the bedrock principle of legal ethics that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Model Rule of Prof'l Conduct r. 4.2

---

[14]     Although Mr. Landsman was designated in the formal order issued by the SEC on May 7, 2021 as an SEC employee *generally* empowered to issue subpoenas, the formal order did not provide him with specific authority to serve a subpoena upon Mr. Kwon if he was represented by counsel. For that, Mr. Landsman needed a specific order issued by the Commission, which he did not obtain.

[15]     *Terraform Labs PTE Ltd. and Do Kwon v. United States Securities and Exchange Commission*, No. 21-cv-8701 (S.D.N.Y.), ECF No. 1.

(Am. Bar Ass'n 2020).[16]  This principle is so basic and categorical that it is not remotely surprising that, as the regulatory history shows, any exception requires an order from the SEC itself.

The Court should not permit the SEC's overreach.  Because the SEC violated Rule 150(b), it has not complied with the administrative steps necessary for enforcement under *Powell*.  The prejudice to Mr. Kwon and TFL is undeniable—only by violating Rule 150(b) could the SEC try to obtain what it could not otherwise obtain: personal jurisdiction, a matter of Constitutional concern and protection.  On this basis alone, the subpoenas directed to Mr. Kwon and TFL should not be enforced.

### B.   To the Extent the SEC Claims to Have Served Counsel for Mr. Kwon, The Court Lacks Jurisdiction over Mr. Kwon Because He Is Not a United States Resident and Has No Case-Related Contacts with the U.S.

The SEC argues that any violation of Rule 150(b) in attempting to personally serve Mr. Kwon was harmless because the SEC served Mr. Kwon's counsel.  Application 14.  But sending courtesy copies to Dentons is not "service" at all, and cannot in any event be used to secure personal jurisdiction over a lawyer's client.  Even if "service" was made on Dentons (the record is clear that it was not), the subpoena would be unenforceable for lack of personal jurisdiction over Mr. Kwon; the SEC cannot evade its inability to secure personal jurisdiction over Mr. Kwon by simply emailing U.S. outside counsel.

As an initial matter, the SEC did not purport to serve counsel when it emailed Dentons courtesy copies of the subpoenas it tried to serve on Mr. Kwon, as the email itself makes clear. Senderowitz Decl. ¶ 19, Ex. 4.  In any event, "[s]ervice of process on an attorney not authorized to accept service for his client is ineffective."  *Zherka v. Ryan*, 52 F. Supp. 3d 571, 577

---

[16]    Rule 4.2 applies to SEC attorneys.  *See* 28 U.S.C. 530(B)(a); Securities And Exchange Commission Division of Enforcement, Enforcement Manual at 3.3.5.3.3.

(S.D.N.Y. 2014).  Throughout their voluntary cooperation with the SEC, Dentons was adamant that the SEC lacked personal jurisdiction over Mr. Kwon and that any exercise of jurisdiction would be improper.  The SEC therefore "has shown no basis for an inference that [Mr. Kwon] had authorized [his] attorneys to accept service of process on [his] behalf."  *Santos v. State Farm Fire and Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990).

Moreover, if service had been effected on counsel instead of Mr. Kwon (which the facts simply do not support), the SEC would lose the only possible basis for asserting personal jurisdiction over Mr. Kwon, who resides outside the United States—tag jurisdiction.  *See* Application 13 n.4 ("The Court has personal jurisdiction over Respondent Kwon because *he was personally served* with process and thus 'found' in this judicial district.") (emphasis added).  The SEC cannot have it both ways:  If counsel was served, then Mr. Kwon was not personally served.

"Section 27 [of the Exchange Act] permits the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment."  *SEC v. Sharef*, 924 F.Supp.2d 539, 544 (S.D.N.Y. 2013) (citing 15 U.S.C. § 78aa).  The Due Process Clause requires "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The SEC must therefore show that (1) Mr. Kwon has "purposefully availed" himself of doing business in the forum state and that (2) the case "arises out of or relates to" *those contacts with the forum*.  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019).

The only U.S. contact the SEC alleges in support of jurisdiction over Mr. Kwon is that he visited New York to attend the conference at which the SEC attempted to serve him.  Landsman Decl. ¶ 5.  That does not suffice to show purposeful availment, especially because the SEC has

not even alleged that the substance of the subpoenas arises out of or relates to Mr. Kwon's appearance at Mainnet 2021, which was not about the Mirror Protocol.  Indeed, the SEC's overall conduct confirms that jurisdiction is lacking; it is precisely because Mr. Kwon lacks minimum contacts with the U.S. that the SEC initially sought his voluntary cooperation and only later resorted to unlawful tactics to try to obtain jurisdiction over him.

## II.   THE COURT SHOULD DENY ENFORCEMENT OF THE SUBPOENA DIRECTED TO TFL

The subpoena directed to TFL is unenforceable for the same reason the subpoena directed to Mr. Kwon is unenforceable—the SEC violated Rule 150(b) in attempting to personally serve TFL through Mr. Kwon.  The subpoena directed to TFL is also unenforceable for the additional reason that TFL is not subject to general or specific jurisdiction in the U.S.

### A.   TFL is Not Subject to General Jurisdiction

The SEC's assertion that the TFL is subject to general jurisdiction because "it was served with process through its CEO" (Application 13 n.4) while Mr. Kwon was passing through New York is wrong as a matter of law.  General jurisdiction requires contacts so continuous and systematic as to render the defendant "essentially at home" in the forum state.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  As the Supreme Court held in *Daimler AG v. Bauman*, a corporation is at home and subject to general jurisdiction where it is incorporated and has its principal place of business.  571 U.S. 117, 119 (2014).  Incorporated and headquartered in Singapore, TFL is not subject to general jurisdiction anywhere in the U.S.

The SEC's attempt to serve a subpoena directed to TFL upon Mr. Kwon was ineffective, as it could not confer jurisdiction over TFL.  It is black letter law that jurisdiction over a foreign corporation cannot be secured by serving a transiting officer or director.  *Estate of Ungar v. Palestinian Authority*, 400 F.Supp.2d 541, 553 (S.D.N.Y. 2005); *accord Martinez v. Aero*

*Caribbean*, 764 F.3d 1062, 1068 (9th Cir. 2014) ("service of process on a corporation's officer within the forum state" does not "create general personal jurisdiction over the corporation" because "[a]n officer of a corporation is not the corporation, even when the officer acts on the corporation's behalf").

The SEC's reliance on *Saint Tropez Inc. v. Ningbo Maywood Industry and Trade Co., Ltd.,* 2014 WL 3512807, *1 (S.D.N.Y. July 16, 2014), is unavailing. *Saint Tropez* held that service on a foreign corporation's transiting officer constitutes effective *service* on the corporation, not that it confers *personal jurisdiction* over it. *Id.* at *4. To the contrary, *Saint Tropez* separately analyzed the foreign corporation's contacts to find that it was subject to personal jurisdiction and did not rely on the service to establish jurisdiction. *Id.* at *4-8. When the Court performs that analysis here, the only reasonable conclusion is that there is no general jurisdiction over TFL.

### B.      TFL is Not Subject to Specific Jurisdiction

To support specific jurisdiction, a defendant's U.S. contacts must show "purposeful availment" of the privilege of doing business in the forum, and the controversy must arise out of or relate to those contacts. "Relatedness … is a sliding-scale test." *Gucci America, Inc. v. Weixing Li*, 135 F.Supp.3d 87, 98 (S.D.N.Y. 2015). In *Gucci America*, where the Bank of China had "substantial" banking contacts with the forum state, the court required that the contacts "only be a 'but for' cause of Gucci's 2010 and 2011 Subpoenas" for bank records. *Id.* But where—as here— TFL acted "entirely abroad and with only sporadic or indirect contacts with the United States" the relatedness inquiry is more demanding and the SEC must establish that the controversy "was *proximately caused* by those contacts." *SPV OSUS Ltd. v. UBS AG*, 114 F.Supp.3d 161, 170 (S.D.N.Y. 2015). None of the few contacts the SEC has alleged (Application 13 n.4) meets that standard.

TFL's one-shot contract with a global digital asset trading platform which happens to be incorporated in Delaware (*id.*) shows neither purposeful availment nor relatedness.  TFL paid that platform nothing, TFL earned nothing, and the platform listed MIR tokens to allow **third parties** around the world—not limited to the U.S.—to trade them.  Joon Decl. ¶ 9.  This does not evidence purposeful availment.  Furthermore, that contract was not the proximate cause of the SEC's subpoena to TFL.  The subpoena demands production of twenty-seven (27) categories of documents, none of which relate to this contract.  Senderowitz Decl, ¶¶ 19, 20, Ex. 4; *see also Blockchange Ventures I GP, LLC. v. Blockchange, Inc.*, No. 20-CV-6866 (AKH), 2021 WL 308277, at *2 (S.D.N.Y. 2021) ("even if such a partnership existed" between a foreign defendant and an in-state business, "Plaintiff has not shown that its causes of action arise out of the partnership" so as to support specific jurisdiction).

The few contacts alleged between TFL employees and the U.S. (Application 13 n.4) are also inadequate to support jurisdiction over TFL because the contacts are also unrelated to this controversy.  Mr. Kwon's "appearing at U.S.-based digital asset conference" Mainnet 2021 does not count—the SEC does not even allege that this appearance pertained to the Mirror Protocol.  And the SEC has not shown how the three employees it identifies as working remotely for TFL could possibly be the *proximate cause* of the SEC's subpoenas.  The document requests are focused on whether mAssets or MIR tokens might be securities that TFL might have sold or marketed to U.S. investors (they are not, and TFL did not).[17]  Joon Decl. ¶ 10.

---

[17]     *See* Senderowitz Decl. Ex. 4 (demanding, *inter alia*, "Documents sufficient to identify all investors, token holders, owners or beneficial interest holders in MIR tokens…"; "All presentations by Terra to investors, potential investors, token holders, or potential token holders in MIR tokens…"; "All Communications with investors, potential investors, token holders, or potential token holders in MIR tokens Concerning Mirror or the Mirror Protocol"; "All Agreements between Terra and third parties regarding the sale or transfer of Mirror Assets…"; "Documents sufficient to show each unique marketing, promotional, or informational Document Concerning Mirror, the Mirror Protocol, or Mirror Assets…";

The SEC's allegation that "mAssets and MIR tokens are offered and available for purchase by U.S. investors through TFL's web application" (Landsman Decl. ¶ 9) also fails to show purposeful availment. *First*, it is wrong: U.S. residents cannot purchase mAssets or MIR tokens *from* TFL's website because TFL does not sell them—users mint or claim them from the protocol, and TFL earns *no* revenue from the users' activity; moreover, the website to which Mr. Landsman refers has been open-sourced and is no longer *even hosted* by TFL. Joon Decl. ¶¶ 7–8. In any event, this front-end user interface merely allows access to the underlying decentralized protocol, *which TFL does not control*. Joon Decl. ¶ 7. *Second*, the mere possibility that some U.S. resident might have visited the website fails to show "'purposeful availment' because it is neither volitional nor distinguishable from its interaction with users located in any other jurisdiction." *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F.Supp.2d 349, 359 (S.D.N.Y. 2009). As this Court has held, "operating a website, however commercial in nature, that is capable of reaching customers" in the forum cannot support personal jurisdiction without evidence of acts *directed at those particular customers*. *Alibaba Grp. Holding Ltd. v. Alibabacoin Found.*, No. 18-CV-2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. April 30, 2018); *see also Royalty Network v. Dishant.com*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) ("Because websites are ... equally accessible everywhere, the mere availability of the site to users in New York, standing alone, does not amount to transacting business in the state."). The SEC offers no evidence that TFL targeted U.S. users.

The SEC's further allegation that "[u]pon information and belief, U.S. investors have purchased both mAssets and MIR tokens" (Landsman Decl. ¶ 9) fares no better. Any purported purchases of mAssets or MIR tokens by U.S. investors could only have been from third parties,

---

"Documents sufficient to identify all fees received by Terra from Mirror or the Mirror Protocol").

not TFL, because TFL does not sell mAssets or MIR tokens.  These "information and belief" allegations cannot support imputing minimum contacts to TFL.  And, even if the SEC had evidence not based on information and belief that U.S. users had minted mAssets or were granted MIR tokens through TFL's web application, "they would nonetheless be insufficient to support the further, necessary finding that [TFL] purposefully and knowingly entered into those transactions with [U.S.] residents or otherwise targeted [the U.S.] for business." *Id.* at 420.  TFL "neither advertises its website in [the U.S.] nor charges … its users," or earns any revenue at all from them. *Capitol Records*, 611 F.Supp.2d at 359.  This is not a situation akin to an initial coin offering in which a defendant marketed and sold digital assets specifically to U.S. investors. *Cf. Balestra v. ATBCOIN LLC*, 380 F.Supp.3d 340, 350–51 (S.D.N.Y. 2019).

"In sum, given the scant contacts between [TFL] and the forum, combined with the utter lack of nexus between [TFL's] alleged conduct and [the SEC's application] … haling [TFL] into court would 'offend traditional notions of fair play and substantial justice.'" *SPV OSUS*, 114 F.Supp.3d at 171 (quoting *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998)).

***

TFL and Mr. Kwon believe the foregoing arguments are dispositive and require that the SEC's application for enforcement of the subpoenas must be denied.[18]  For the same reason, these arguments entitle TFL and Mr. Kwon to summary judgment in their earlier-filed action. *See* ECF No. 1, 21-cv-8701.

---

[18]    If the Court disagrees, Respondents believe that it should direct the parties to meet and confer regarding the scope of the subpoenas.  The record makes clear that there are significant issues as to what exactly the subpoenas purport to call for and whether responsive documents exist.  A meet and confer would help narrow those issues and obviate the need for this Court to evaluate objections to each of the twenty-seven document requests in the subpoenas.

**CONCLUSION**

For these reasons, Respondents respectfully request that the Court deny the SEC's application to enforce its administrative subpoenas in its entirety.

Dated: December 17, 2021                    Respectfully submitted,

                                            */s/ Douglas W. Henkin*
                                            Douglas W. Henkin
                                            DENTONS US LLP
                                            1221 Avenue of the Americas
                                            New York, NY 10020
                                            Telephone: (212) 768-6832
                                            Facsimile: (212) 768-6800

                                            Nicholas W. Petts (*pro hac vice* forthcoming)
                                            1900 K Street NW
                                            Washington, D.C. 20006
                                            Telephone: (202) 496-7356
                                            Facsimile: (202) 496-7756

                                            *Counsel for Respondents Do Kwon*
                                            *and Terraform Labs PTE, Ltd.*

**CERTIFICATE OF SERVICE**

    I, Douglas Henkin, an attorney, hereby certify that on December 17, 2021, I electronically filed the foregoing **RESPONDENTS' OPPOSITION TO U.S. SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER TO SHOW CAUSE AND FOR AN ORDER REQUIRING COMPLIANCE WITH SUBPOENAS** by using the CM/ECF system, which will send notification of such filing to all counsel of record.


                        *s/ Douglas W. Henkin*
                        Douglas W. Henkin

23