UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　Applicant,<br><br>v.<br><br>TERRAFORM LABS PTE LTD. and DO KWON<br><br>　　　　　　　　　　Respondents. | Civil Action No. 1:21-mc-00810_____<br><br><br>Hon. J. Paul Oetken<br><br>Hon. Barbara C. Moses |

**DECLARATION OF STEPHEN J. SENDEROWITZ IN SUPPORT OF RESPONDENTS' OPPOSITION TO THE U.S. SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER REQUIRING COMPLIANCE WITH SUBPOENAS**

I, Stephen J. Senderowitz, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1.　　　I am a partner with the law firm of Dentons US LLP.

2.　　　I submit this declaration in support of the opposition by Respondents Terraform Labs PTE, Ltd. ("TFL") and Do Kwon to the Application by the United States Securities and Exchange Commission ("SEC" or "Commission") for an Order Requiring Compliance with Subpoenas. The SEC's application seeks an order from this Court directing Mr. Kwon and TFL to comply with investigative subpoenas attempted to be served personally upon Mr. Kwon for both himself and TFL in connection with the Commission's non-public investigation entitled *In the Matter of Mirror Protocol* (Internal File No. HO-14164) (the "Mirror Protocol Investigation"). This Declaration is based upon my direct participation in the Mirror Protocol Investigation as one of Respondents' counsel, and sets forth both (1) the nature of Mr. Kwon's and TFL's cooperation with the SEC's investigation and (2) communications with the SEC regarding this matter.

1

3. For over 45 years, I have focused my practice on securities and commodities litigation, first as an assistant US attorney for the Northern District of Illinois, where as deputy chief of the Special Prosecutions Division, and prior thereto as deputy chief of the Criminal Division, I supervised criminal commodities and securities prosecutions. Since 1983, in private practice, I have represented exchanges, hedge funds, broker-dealers, traders, and other financial market participants in defense of regulatory, criminal, class-action, and other civil matters implicating U.S. securities and commodities laws and regulations. I am licensed in Illinois and have defended financial market litigations in Illinois, New York, and 22 other states and the District of Columbia.

4. I have on multiple occasions represented parties before the SEC, including by appearing on their behalf in investigatory proceedings. In such proceedings the SEC has recognized my appearance and representation of clients when I have advised the SEC that I represent a party and provided the required contact information, as I did in the instant matter for both myself and Douglas Henkin, also a Dentons partner.

5. On May 20 and May 23, 2021, Roger Landsman and Kathleen Hitchens, attorneys from the SEC's Division of Enforcement, emailed Mr. Kwon requesting his voluntary cooperation in connection with a formal order of investigation styled *In the Matter of Mirror Protocol*, HO-14164 (the "Formal Order").[1]

6. TFL and Mr. Kwon retained Dentons US LLP, specifically Mr. Henkin and myself, to represent them in connection with the SEC's request for voluntary cooperation. On May 27, 2021, on behalf of TFL and Mr. Kwon, I left a voicemail for Mr. Landsman, who returned my call, at which time I advised him that Mr. Henkin and I represented the

---

[1] *See* Landsman Decl. ¶ 13, ECF No. 4.

Respondents.  We arranged to have a call later that afternoon with Mr. Landsman, his colleague Kathleen Hitchins, Mr. Henkin, and me attending.  On my call with Mr. Landsman I also advised him that as soon as our call ended I would send him by email contact information for both myself and Mr. Henkin, which I did.  A copy of my May 27 email is attached as **Exhibit 1**.

7.      Later on May 27, during the phone call with Landsman and Hitchins, they expressed their desire to learn more about the Mirror Protocol, mAssets, and MIR tokens.  They indicated their interest in speaking with a representative of TFL and envisioned a discussion lasting between two to three hours.  Among other points of discussion, Mr. Henkin and I emphasized that any cooperation could not contribute to establishing jurisdiction over TFL or Mr. Kwon with respect to any proceedings.

8.      Mr. Henkin and I, as counsel for Mr. Kwon and TFL, thereafter engaged in multiple conversations with Landsman and Hitchins.  We made clear that although our clients were beyond the SEC's territorial jurisdiction, we understood the SEC could through various protocols seek investigative assistance from regulators in foreign countries and that our client Mr. Kwon was willing to participate, pursuant to a proffer agreement, in a voluntary interview with Landsman and Hitchins as an act of good faith and with the belief that none of TFL's activities contravened US securities laws.  We negotiated a proffer agreement, whereby Mr. Kwon agreed to be interviewed for approximately three hours, and the SEC agreed that Mr. Kwon's statements could not directly be used against him or TFL in any subsequent enforcement action, except for limited purposes.  The proffer agreement—drafted by the SEC with input from Dentons—explicitly identified Dentons (specifically myself) as representing, and appearing for, Mr. Kwon and TFL in the Mirror Protocol Investigation; in other words, the SEC drafted and signed a document expressly recognizing Dentons as counsel for TFL and Mr. Kwon in

connection with the Mirror Protocol Investigation. A copy of the proffer agreement is attached as **Exhibit 2**.

9. On July 8, 2021, the SEC staff interviewed Mr. Kwon for approximately *five* hours. The interview was conducted via WebEx because Mr. Kwon then resided in South Korea (he now lives in Singapore). Mr. Kwon was represented by Dentons during the interview. Mr. Landsman began the interview by stating that he would be trying to understand the Mirror Protocol from a business, economic, and technical perspective. Consistent with that statement and the length of the interview, the topics covered included, but were not limited to the Mirror Protocol's creation, implementation, functionality, and operations; whether TFL receives income from the minting of or transactions in mAssets; Mr. Kwon's ownership of mAssets or MIR tokens;[2] and where mAssets trade.

10. The SEC also posed several questions about TFL as an entity—including about its corporate structure, and its relationship to investors in the protocol—despite our belief that such inquiry was beyond the scope of the interview. Mr. Henkin and I asked the SEC to move on to other questions and directed Mr. Kwon not to respond to the inquiry, as this was not a subject related to the operation of the Mirror Protocol. For the same reason, we limited any questions about the TFL corporate structure and identification of its executives and their duties, as those queries were more akin to an attempt to create an investigative witness list. When we made these two requests, the SEC moved on to other topics. Mr. Kwon was transparent and forthcoming throughout the interview.

---

[2] Mr. Kwon voluntarily showed his digital wallet to the SEC staff during the interview; it contained — in total — $155.46 of four mAssets and $10,000 worth of MIR tokens (at the time the value of all outstanding MIR tokens was $283 million).

11.     At no time during the interview did the SEC staff express frustration or displeasure with Mr. Kwon's responses to questions. To the contrary, when the extended (by 2 hours) interview concluded, Landsman and Hitchins effusively thanked Mr. Kwon for his cooperation, for extending the interview without objection, and for providing useful information in response to their questions.

12.     Subsequent to the interview, on July 22, the SEC requested, again through Dentons, that Mr. Kwon and TFL voluntarily produce documents. The nineteen requests were onerous, ill-defined, overbroad, and akin to a subpoena. The request (1) in part sought records that were unavailable and (2) was otherwise so broad and/or defective that to the extent responsive documents might exist, the requests had to be narrowed and clarified.

13.     Communications ensued, by phone and email, between the SEC and Dentons lawyers, with the shared goal of reaching common ground for the voluntary production of information responsive to the SEC's requests, including a phone call on July 28, 2021 with the SEC lawyers, at which we discussed some problems we saw with the request. The SEC requested that we put in writing our positions as to each request, which we did on August 17, 2021.

14.     On August 17, 2021, Dentons provided responses to the SEC's voluntary document requests, in which we reiterated the various respects in which the requests were unclear, overbroad, or otherwise sought information not relevant to the Commission's inquiry, sought production of publicly available data, or sought information TFL did not possess. The response also pointed the SEC to publicly available sources (such as Github and other public Internet sites) from which the information sought could be obtained. Further, the response reiterated the request that that the SEC advise as to its intentions related to TFL's status in the

investigation, as well as its goal(s) with respect to the operation of the Mirror Protocol, so that TFL could evaluate whether assistance might be feasible. A copy of this response is attached as **Exhibit 3**.

15. On August 25, 2021, Mr. Landsman called Mr. Henkin and me, and indicated that the SEC staff believed that MIR tokens and mAssets might be securities and requested that our clients consider what they might do to address the SEC's views.

16. In a conversation on September 15, 2021, Landsman, Hitchins and Reed Muoio advised that in the SEC's view, an enforcement action would be warranted to resolve the issues set forth in paragraph 15 even if there could be a negotiated resolution. They also indicated that any cooperation—specifically the implementation of remedial actions related to Mirror Protocol—would result in a reduced financial sanction included in any consent agreement. However, they were unwilling (or simply unable) to specify either the amount of any contemplated financial sanction or the extent of the desired remedial actions and cooperation. The lawyers further failed to mention that they had recently learned Mr. Kwon was slated to appear at a conference in New York City in less than a week.

17. Even absent assurance there would not be an enforcement action, TFL and Mr. Kwon continued to cooperate with the SEC's investigation. That Friday afternoon, September 17, I reached out by phone to Mr. Landsman and requested, in connection with any remedial cooperation, that we arrange a call at which the SEC would specifically advise us as to the "remedial" steps it thought TFL might take in connection with the Mirror Protocol. I reiterated our view that an enforcement action was not appropriate, and suggested the Commission decline to bring such an action in exchange for our clients' cooperation. I also stressed that in any event, we needed to understand what the SEC believed could be done by way of remediation, in order

to determine if TFL was even capable of implementing the SEC's remediation goals. I suggested that our discussions should focus on this issue. Mr. Landsman advised me he would discuss the matter with his colleagues. Mr. Landsman did not mention that earlier that morning he had issued and signed subpoenas directed to TFL and Mr. Kwon. At no time during this call did Mr. Landsman mention the subpoenas, much less inquire whether Dentons was willing to accept service of them on behalf of TFL or Mr. Kwon. Indeed, despite his steady engagement with Mr. Henkin and me over the course of many weeks, Mr. Landsman never indicated any intention to issue subpoenas.

18. On September 20, 2021, while in New York City attending "Mainnet 2021," a cryptocurrency summit, Mr. Kwon was approached by an SEC-hired private process service company—"Cavalier Courier & Process Service"—and handed an envelope containing the aforementioned subpoenas, seeking production of documents by TFL and Mr. Kwon, and in-person testimony by Mr. Kwon in Washington, D.C. in connection with the SEC's investigation. The subpoenas were handed to Mr. Kwon in public: Mr. Kwon was approached by the process server as he exited an escalator at the Mainnet summit while on his way to participate in a panel discussion just minutes later.

19. The SEC subsequently sent copies of the subpoenas to Dentons as counsel for Mr. Kwon and TFL, stating that they had been "served this morning personally" on Mr. Kwon, but not suggesting that the SEC was attempting to effect service by sending copies to Dentons. A copy of the email transmitting these copies, along with the copies themselves, is attached as **Exhibit 4**.

20. The subpoenas include 27 document requests—eight more than in the voluntary request to produce information (¶ 12, *supra*).

21. I emailed Mr. Landsman on September 26, requesting copies of two documents: (1) the order issued by the Commission authorizing personal service upon Mr. Kwon, pursuant to Rule 150(b) of the SEC's Rules of Practice (which governs service of papers upon persons represented by counsel) and (2) the Formal Order. Mr. Landsman responded on September 28, advising us of the process for obtaining a copy of the Formal Order. SEC staff did not produce the requested 150(b) order. Mr. Landsman in his email stated that the subpoenas were served "pursuant to Rule 150(d)(1)" (which sets forth the process for delivering papers to persons required to be served). A copy of this email exchange is attached as **Exhibit 5**.

22. Mr. Henkin and I spoke with SEC attorneys by phone on September 28, 2021. In addition to discussing our respective positions as to the subpoenas, Mr. Landsman described the SEC's ideas that they were considering, including, among other things, that TFL delist MIR tokens from US platforms, or, in the alternative, register MIR tokens and mAssets as securities. Mr. Landsman also made clear a public consent order would be required for any resolution.

23. Mr. Henkin followed up with the SEC by email on October 1, a copy of which is attached as **Exhibit 6**.

24. Despite our belief that the SEC failed to follow the steps necessary to effect service of the subpoenas personally on Mr. Kwon, Mr. Henkin and I continued to engage with Landsman and Hitchins for the purpose of resolving the SEC's concerns related to Mirror Protocol. In particular, during a phone call on October 7, we sought the SEC's view as to how our clients might effectuate the agency's goals, such as how the SEC believed registration of mAssets could be accomplished given the prior discussions. We were advised that implementation would be up to our clients to determine and achieve, that the SEC would not provide any advice, and that any steps would need to be taken "in short order." We were also

advised that a financial sanction was likely in any event, regardless of the success of any voluntary remediation efforts.

25. During this call, Mr. Henkin and I reiterated our view that the SEC's service of the subpoenas directly upon Mr. Kwon was improper, and that delivery of the subpoenas to counsel, even were such delivery intended to comprise service, would be ineffective in establishing a basis for personal jurisdiction over TFL and Mr. Kwon.

26. On October 22, TFL and Mr. Kwon filed a lawsuit asserting claims under the APA and the Fifth Amendment's Due Process clause, seeking a declaration that the subpoenas were invalid and should be quashed because Mr. Landsman issued them without adhering to Rule 150(b)'s requirement that he obtain an order of authorization from the Commission permitting service upon a person represented by counsel. *Terraform Labs PTE Ltd. and Do Kwon v. United States Securities and Exchange Commission*, No. 21-cv-8701 (S.D.N.Y.), ECF No. 1.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

December 17, 2021

_____
Stephen J. Senderowitz