UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Applicant,<br>          v.<br><br>TERRAFORM LABS PTE, LTD. and DO KWON,<br><br>                              Respondents. | No. 21-mc-00810 (JPO)<br><br>Hon. J. Paul Oetken |

**U.S. SECURITIES AND EXCHANGE COMMISSION'S REPLY IN SUPPORT OF APPLICATION FOR AN ORDER REQUIRING COMPLIANCE WITH SUBPOENAS**

Dated: December 27, 2021

James P. Connor
U.S. SECURITIES AND EXCHANGE COMMISSION
100 F Street, N.E.
Washington, D.C. 20549
Tel: (202) 551-8394
Email: connorja@sec.gov

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   ARGUMENT ....................................................................................................................... 2

      A.    The SEC Properly Served the Subpoenas Upon Kwon and Terraform ...................... 2

      B.    The Court Has General and Specific Personal Jurisdiction Over Kwon .................... 5

      C.    The Court Has Specific Personal Jurisdiction Over Terraform ................................. 6

III.  CONCLUSION .................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*Alibaba Grp. Holding Ltd. v. Alibabacoin*,
   2018 WL 2022626 (S.D.N.Y. Apr. 30, 2018) .................................................................... 9

*Balestra v. ATBCOIN LLC*,
   380 F. Supp. 3d 340 (S.D.N.Y. 2019) ........................................................................... 6, 10

*Chew v. Dietrich*,
   143 F.3d 24, 29 (2d Cir. 1998) ........................................................................................... 7

*Goldfarb v. Channel One Russia*,
   442 F. Supp. 3d 649 (S.D.N.Y. 2020) ................................................................................ 8

*Gucci Am., Inc. v. Weixing Li*,
   135 F. Supp. 3d 87 (S.D.N.Y. 2015) .................................................................................. 7

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*,
   138 F. Supp. 2d 449 (S.D.N.Y. 2000) ................................................................................ 9

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002) ............................................................................................... 5

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
   925 F.2d 556, 562 (2d Cir. 1991) ....................................................................................... 5

*M. Shanken Commc'ns, Inc. v. Cigar500.com*,
   2008 WL 2696168 (S.D.N.Y. July 7, 2008) ...................................................................... 8

*Royalty Network Inc. v. Dishant.com, LLC*,
   638 F. Supp. 2d 410 (S.D.N.Y. 2009) ................................................................................ 9

*SEC v. Deloitte Touche Tohmatsu CPA Ltd.*,
   No. 11 Misc. 512 (D.C.C. May 30, 2013) ......................................................................... 4

*SEC v. Knowles*,
   87 F.3d 413 (10th Cir. 1996) ............................................................................................ 10

*SEC v. PlexCorps*,
   2018 WL 4299983 (E.D.N.Y. Aug. 9, 2018) ..................................................................... 7

*SPV OSUS Ltd. v. UBS AG*,
   2015 WL 4394955 (S.D.N.Y. July 20, 2015) .................................................................... 9

**Statutes & Rules**

17 C.F.R. § 201.50(b) ............................................................................................... 1, 2, 3, 4

17 C.F.R. § 201.102(d) ........................................................................................................... 3

17 C.F.R. § 201.150 ................................................................................................................. 5

17 C.F.R. § 203.8 ................................................................................................................. 3, 5

17 C.F.R. § 232(c) .................................................................................................................... 3

15 U.S.C. § 78aa ...................................................................................................................... 5

Amends. to Commission Rules of Prac.,
    Release No. 90442 (Nov. 17, 2020) ................................................................................. 4

**Other**

*Fake Tesla, Apple Stocks Have Started Trading on Blockchains* (July 6, 2021) Bloomberg News (https://www.bloomberg.com/news/articles/2021-07-06/fake-tesla-apple-stocks-have-started-trading-on-blockchains) ............................................................................................................. 10

*Our mission is to bring decentralized monies to as many blockchains as possible: Terraform Labs CEO* (July 12, 2021) Yahoo! News (https://news.yahoo.com/mission-bring-decentralized-monies-many- 171201969.html) ............................................................................................... 10

The U.S. Securities and Exchange Commission ("SEC") respectfully submits this reply in support of our Application for an Order Requiring Compliance with subpoenas served upon Respondents Terraform Labs PTE, Ltd. ("Terraform") and Do Kwon ("Kwon") on September 20, 2021 ("Subpoenas").

## I.  INTRODUCTION

Respondents' opposition is largely self-defeating. They do not contest that the SEC has met three of the four requirements for judicial enforcement of the Subpoenas, namely that the SEC's Mirror Protocol Investigation is being conducted pursuant to a legitimate purpose; that the information sought through the Subpoenas is relevant to that legitimate purpose, and that the SEC does not already possess the information sought through the Subpoenas. As for the fourth factor – whether the SEC's administrative steps have been followed – Respondents concede that (1) the SEC personally delivered the Subpoenas to Respondent Kwon, the CEO of Respondent Terraform, while Kwon was in New York, New York, on September 20, 2021; and (2) the SEC electronically delivered the Subpoenas to Respondents' counsel on the very same day.

Nonetheless, Respondents argue that the Court should not enforce the Subpoenas because they were allegedly improperly served pursuant to SEC Rule of Practice 150(b) [17 C.F.R. § 201.50(b)], which Respondents contend required the SEC to serve Respondents' counsel, instead of Kwon. But Respondents' Opposition confirms that their counsel did not submit a Notice of Appearance (or any equivalent) to prompt a requirement to serve counsel, nor did counsel agree to accept service, requiring the SEC to serve Kwon personally as explicitly permitted pursuant to Rule 150(d). Respondents rely heavily upon an SEC reply brief in another case, in which the SEC argued that Rule 150(b) permitted service upon counsel in investigations without a formal notice of appearance. But Respondents mischaracterize the SEC's position in

1

that case: there the SEC argued that it could serve through counsel *because counsel agreed to accept service of the subpoenas*. In any event, Respondents here concede that the SEC emailed the subpoenas to Respondents' counsel, which constitutes proper service under Rule 150(c), even if Respondents' position on Rule 150(b) was correct (and it is not).

Finally, Respondents' make a last-ditch effort to evade enforcement of the Subpoenas by suggesting that the Court lacks personal jurisdiction. But Respondents cannot escape that Terraform and Kwon have purposefully availed themselves of the privilege of doing business in the United States, establishing numerous contacts, such as contracting with a U.S.-based digital asset trading platform and associated U.S.-based entities; employing at least *four* individuals residing in the U.S.; offering MIR Tokens and mAssets to U.S. investors through its website; and promoting mAssets, which "mirror" U.S securities, in U.S media. That is well more than enough for the Court to exercise specific personal jurisdiction over Respondents under settled law.

## II. ARGUMENT

### A. The SEC Properly Served the Subpoenas Upon Kwon and Terraform

As we demonstrated in our opening brief, the SEC properly issued and served the Subpoenas upon Kwon and Terraform while Kwon was in New York, New York under SEC Rule of Practice 150 [17 C.F.R. § 201.50]. SEC Mem. 12-15 (ECF No. 2). Respondents offer a scattershot attack on the SEC's service, Opp. 9-17,[1] based entirely upon manufactured ambiguities caused by Respondents' counsel's supposed "partial" representation of Respondents, under which they were "not authorized to accept service." Opp. 15. As Respondents would have it, they may represent a client in an SEC investigation, refuse to accept service of

---

[1] "Opp." refers to Respondents' "Opposition to the SEC's Application for an Order to Show Cause and for an Order Requiring Compliance with Subpoenas," filed on December 17, 2021 (ECF No. 18).

subpoenas, then invalidate those subpoenas when they are personally served upon Respondents' client, based upon the argument that the subpoenas should have been served upon counsel.

Respondents' dizzying position is inconsistent with the language of Rule 150(b), (c), and (d), which, as we stated in our opening brief, apply to SEC investigative subpoenas. SEC Mem. 13 (citing 17 C.F.R. § 203.8; 17 C.F.R. § 232(c)). Rule 150(b)-(d) state, in pertinent part:

> (b) *Upon a person represented by counsel.* Whenever service is required to be made upon a person represented by counsel who has filed a notice of appearance pursuant to § 201.102, service shall be made pursuant to paragraph (c) of this section upon counsel, unless service upon the person represented is ordered by the Commission or the hearing officer.
>
> (c) *How made.* Service shall be made electronically in the form and manner to be specified by the Office of the Secretary in the materials posted on the Commission's website. Persons serving each other shall have provided the Commission and the parties with notice of an email address.
>
> (d) *Additional methods of service.* If a person reasonably cannot serve electronically, or if service is of an investigative subpoena pursuant to 17 CFR [§] 203.8, service may be made by delivering a copy of the filing. *Delivery* means [ ] Personal service - handing a copy to the person required to be served.

17 C.F.R. § 201.150(b)-(d). Respondents concede that they did not provide the notice of appearance referenced in Rule 150(b), but argue that the SEC was required to serve Respondents' counsel because they "appeared" in the Mirror Protocol by providing their contact information to SEC attorneys. Opp. 11. Respondents miss the entire point of Rule 150(b), which is to allow for *service* through counsel of represented parties. When, as here, counsel refuses to accept service, they have not entered an appearance in the investigation for purposes of Rule 150(b). This is confirmed by the plain language of Rule 150(b), which states that counsel must "file a notice of appearance pursuant to § 201.102," which specifically references "*designation of address for service*." Rule 102 [17 C.F.R. § 201.102(d)] ("Designation of address for service; notice of appearance; power of attorney; withdrawal."). By providing the

"business address [and] email address" referenced in Rule 102, but then refusing to accept service at those addresses, Respondents' counsel did not enter an appearance in the investigation for purposes of Rule 150(b), meaning that the SEC was not required to serve counsel.

Respondents' heavy reliance on an SEC brief in a prior subpoena enforcement action fails for the same reason.  *See* Ex. A.,[2] SEC Reply Br., *SEC v. Deloitte Touche Tohmatsu CPA Ltd.*, No. 11 Misc. 512 (D.C.C. May 30, 2013).  Although the SEC's brief in that case stated that a "formal 'notice of appearance'" is not always required for Rule 150(b) to apply in investigations, *id*. at 15, n.9, the SEC stated there (just as here) that counsel was required to *accept service of the subpoena* for Rule 150(b) to be given effect.  *Id*. at 13 ("The SEC Is Authorized to Serve an Administrative Subpoena Through Counsel Who Agrees to Accept Service on Behalf of His Client"); *id*. at 14-15 (arguing that Rule 150(b) applied because "the counsel upon whom service of the Subpoena was made [ ] explicitly agreed to accept such service.").  In that case, counsel to a party agreed to accept service of a subpoena, then the party sought to renege on that agreement years after service was effected.[3]  *Id*. at 13-15.  The case has no application here, where Respondents' counsel has refused to accept service.

Respondents also fail to meaningfully address the 2020 amendments to Rule 150, which for the first time specifically referenced investigative subpoenas, stating that "service [of] an investigative subpoena . . . may be made by . . . personal service," the precise method by which the SEC served Kwon.  Rule 150(d); Amends. to the Commission Rules of Prac., Release No. 90442 (Nov. 17, 2020) (available at https://www.sec.gov/rules/final/2020/34-90442a.pdf) ("We

---

[2]  "Ex. A" refers to Exhibit A attached to this reply brief.

[3]  The *Deloitte* subpoena enforcement action was voluntarily dismissed after the documents sought by the subpoena were produced.  Joint Mot. to Dismiss, *SEC v. Deloitte Touche Tohmatsu CPA Ltd.*, No. 11 Misc. 512, ECF No. 72 (D.D.C. Jan. 27, 2014).

4

also proposed to amend Rule 150(d) to provide for additional methods of service if a person reasonably cannot comply with the electronic service requirements, or if service is of an investigative subpoena pursuant to 17 CFR [§] 203.8.").

In the end, the dispute about Rule 150(b) is academic, because even if Respondents are correct the SEC was required to serve Respondents' counsel, Rule 150(b) then requires the Commission to serve counsel in accordance with Rule 150(c) [17 C.F.R. § 201.150(c)], which explicitly permits electronic service – the precise manner in which the SEC staff delivered the subpoenas to Respondents' counsel. *See* 17 C.F.R. § 201.150(c) ("Service shall be made electronically[.]"). And, contrary to Respondents' suggestion (Opp. 15), there are no "magic words" necessary to effect service: "electronic service is complete upon transmission." 17 C.F.R. § 201.150(e).

**B.     The Court Has General and Specific Personal Jurisdiction Over Kwon**

The Court has personal jurisdiction over Kwon because he was served with the Subpoenas while he was in the United States. *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991) ("[Exchange Act] Section 27 [15 U.S.C. § 78aa] confers personal jurisdiction over a defendant who is served anywhere within the United States.")).

Respondents largely concede the point, but argue that "if service has been effected on counsel instead of Mr. Kwon," the SEC would "lose the only possible basis for asserting jurisdiction over Mr. Kwon[.]" Opp. 16. This is incorrect. What matters is whether the party to whom the subpoena is directed (in this case Kwon) was present in the forum when service of process was effected, not the manner in which the service was made. *See In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002) ("when a potential witness comes to the United States it is neither unfair nor inappropriate under the statute to undertake his discovery here.").

5

Finally, even if the Court did not have general jurisdiction over Kwon (and it does), Kwon is subject to specific jurisdiction, because he purposefully availed himself of the privilege of doing business in the United States. *Balestra v. ATBCOIN LLC*, 380 F.Supp.3d 340, 350 (S.D.N.Y. 2019) ("[t]he crucial question is whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State[.]'") (citation omitted). Respondents argue that "the only contact the SEC alleges in support of jurisdiction over Kwon is that he visited New York to attend a conference." Opp. 16-17. But Respondents ignore Kwon's other substantial contacts with the U.S., including but not limited to:

- Kwon promotes the Mirror Protocol, mAssets, and the MIR token through Terraform's website, web application, social media accounts, podcast interviews, and through U.S. media. Declaration of Roger J. Landsman ¶ 9, ECF No. 4 ("Landsman Decl.").

- Kwon corresponded with a U.S. digital asset trading platform and discussed listing of MIR tokens, which ultimately led to a contract between Terraform and the U.S.-based trading platform for the listing of MIR tokens with the platform. Landsman Decl. ¶ 9.

- Kwon signed an agreement with a U.S.- digital asset trading platform on behalf of a wholly owned Terraform subsidiary, under which the U.S digital asset trading platform paid the Terraform subsidiary at least $200,000 for MIR tokens. Ex. B, Second Declaration of Roger J. Landsman ¶ 3, Dec. 27, 2021 ("Second Landsman Decl.").

These contacts, in addition to Kwon's appearance in the United States to speak at a digital asset conference as the "co-founder and CEO of Terraform," are more than enough for the Court to exercise specific personal jurisdiction over Kwon. *See, e.g., Balestra*, 380 F.Supp.3d at 350-51 (exercising specific personal jurisdiction over co-founders of digital asset company because the co-founders "targeted the U.S. market in an effort to promote" the digital assets at issue in the litigation, including "participation at conferences.").

C.     **The Court Has Specific Personal Jurisdiction Over Terraform**

In our opening brief, we established that the Court has specific personal jurisdiction over Terraform because it purposefully availed itself of the privilege of doing business in the United

6

States, establishing numerous contacts, such as contracting with a U.S.-based trading platform, employing four individuals residing in the United States, and making its mAssets available to U.S. investors through Terraform's website. SEC Mem. 13 n.4; Landsman Decl. ¶ 7.

Respondents do not dispute these contacts, but argue that they are insufficient because the SEC has not shown that "the controversy [ ] arises out of or relate[s] to those contacts." Opp. 18. But the SEC easily meets the relatedness test, which "is but a part of a general inquiry which is designed to determine whether the exercise of personal jurisdiction in a particular case does or does not offend traditional notions of fair play and substantial justice." *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998). For example, Terraform argues that its listing contract with a U.S.-based trading platform to make the MIR token available for trading in the U.S. was not the "proximate cause" of the Subpoenas.[4] Opp. 19. But this is plainly incorrect, as the Subpoenas seek information regarding the MIR Token, the very thing that Terraform facilitated for sale to U.S.-based investors through its contract with the U.S. trading platform. Landsman Decl. ¶ 9.

Terraform also argues that the listing agreement does not demonstrate minimum contacts because it allowed "third parties" to trade the MIR token. But those "third parties" included U.S. investors, who traded MIR tokens through the U.S.-based trading platform, showing that Terraform purposefully availed itself of the U.S. market. Landsman Decl. ¶ 9; *see SEC v. PlexCorps*, No. 17CV7007CBARML, 2018 WL 4299983, at *10, 19 (E.D.N.Y. Aug. 9, 2018) (exercising specific jurisdiction over a digital asset company when the company "created contacts with the United States by, among other things, doing business while traveling in the

---

[4] The appropriate test for relatedness is not a "proximate cause" analysis, as Respondents wrongly state, but the less stringent "but-for" cause analysis. *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 98 (S.D.N.Y. 2015) (exercising personal jurisdiction in a subpoena enforcement action and holding that defendant's contacts "need only be a 'but for' cause of [the] Subpoenas" when defendant's contacts with the forum are, like here, substantial).

7

United States, utilizing United States–based payment services, and marketing their products to United States consumers via the Internet."); *M. Shanken Commc'ns, Inc. v. Cigar500.com*, 2008 WL 2696168, at *8-9 (S.D.N.Y. July 7, 2008) (finding jurisdiction comported with due process when defendant entered into a contract with a party in the forum, among other contacts).

Respondents further state that Terraform's contacts with the U.S.-based digital asset platform are insufficient because there was only a "one-shot contract." Opp. 19.  But Terraform had at least two contracts with U.S.-based entities associated with that digital-asset trading platform, a 2021 Listing Services Agreement (which Respondents discuss), and a 2019 Custodial Services Agreement with a New York-based trust associated with the digital asset platform (which Respondents ignore).[5]  Under the 2019 Custodial Services Agreement, Terraform agreed to pay the U.S.-based entity to store certain digital assets on Terraform's behalf, showing even further intentional contacts with the United States sufficient for the Court to exercise personal jurisdiction over Terraform.  Landsman Second Decl. ¶ 4.

Respondents also seek to downplay the fact that it has multiple employees residing in the United States.  Opp. 19.  These employees include its General Counsel, Head of Research, and Director of Special Projects, whose work included the Mirror Protocol.  Landsman Decl. ¶ 4; Landsman Second Decl. ¶¶ 6-7.  Citing no legal authority, Terraform argues that the "few contacts alleged between [Terraform] employees and the U.S [ ] are inadequate to support jurisdiction over Terraform[.]" Opp. 19.  This is incorrect.  *See Goldfarb v. Channel One Russia*, 442 F. Supp. 3d 649, 664 (S.D.N.Y. 2020) (exercising personal jurisdiction over a Russian entity that "purposefully availed itself of the privilege of conducting business within the forum state by

---

[5]  The SEC (and presumably Respondents) have copies of both contracts and the SEC will produce the contracts for an *in camera* review if requested by the Court.

8

maintaining a studio and at least one full-time employee in New York and by distributing its programming to paying subscribers throughout New York."). Indeed, Terraform has cited no case where a court has held that a company with multiple employees residing in the U.S. does not have sufficient minimum contacts for the exercise of specific personal jurisdiction.[6]

Terraform also seeks to minimize the fact that its website and web application allowed U.S. investors to purchase MIR tokens and mAssets by arguing that the website "has been open-sourced and is longer even hosted by [Terraform]." Opp. 20. But that only allegedly changed on November 14, 2021 – two days *after* the SEC filed this Subpoena Enforcement Action. Joon Decl. ¶ 8 (ECF No. 19). Terraform's belated attempts to eliminate its substantial contacts with U.S. does not change that Terraform hosted a website through which U.S. investors could purchase MIR Tokens and mAssets, the very digital assets that the SEC is investigating.[7] Landsman Decl. ¶¶ 7, 9; *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) (holding that an interactive website related to the claims generally "supports a

---

[6] The cases cited by Respondents in which the Court found no jurisdiction are inapposite. Opp. 18-20. Respondents bears little resemblance to the defendants in *SPV OSUS Ltd. v. UBS AG*— which were "foreign banks alleged to have provided services to foreign investment funds, acting entirely abroad and with only sporadic or indirect contacts with the United States," with no employees in the United States, and which did not "directly or purposefully solicit, market, or otherwise seek out business from potential customers located in the United States." 114 F.Supp.3d 161, 168–70 (S.D.N.Y. July 20, 2015). And Respondents' contacts with the United States are far greater than in *Alibaba Grp. Holding Ltd. v. Alibabacoin Found*, in which the Court did not exercise jurisdiction in part because plaintiff did not establish that the supposed link to the forum (a website) had "actually [been] used to effect commercial transactions with customer in New York." No. 18-CV-2897 (JPO), 2018 WL 2022626, at *4 (S.D.N.Y. Apr. 30, 2018). The same is true of *Royalty Network Inc. v. Dishant.com, LLC*, in which the Court found no jurisdiction when the only alleged contact with New York was a website and the plaintiff had "no evidence that any New York resident actually engaged in any [ ] transactions" on the website. *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 420 (S.D.N.Y. 2009).

[7] Terraform represents that "any purported purchases of mAsset or MIR tokens by U.S. investors could only have been from third parties, not [Terraform], because [Terraform] does not sell mAssets or MIR tokens," Opp. 20-21, but a U.S.-based digital asset trading platform purchased $200,000 in MIR tokens from a Terraform subsidiary. Landsman Second Decl. ¶ 3.

9

finding of personal jurisdiction over the defendant."). And Terraform itself has acknowledged in communications with a U.S.-based digital asset trading platform that 15 percent of the Mirror Protocol's usage is from the United States. Landsman Second Decl. ¶ 5.

Finally, Terraform never addresses its other substantial contacts with the United States market. For example, Terraform ignores that the mAssets that the SEC is investigating, which are created through the Mirror Protocol that Terraform developed, "mirror" securities traded on U.S. national security exchanges, leaving no question that Terraform is targeting U.S. investors. Landsman Decl. ¶¶ 6, 9 (citing *Fake Tesla, Apple Stocks Have Started Trading on Blockchains* (July 6, 2021) Bloomberg News (https://www.bloomberg.com/news/articles/2021-07-06/fake-tesla-apple-stocks-have-started-trading-on-blockchains)). And Terraform's CEO has conducted interviews in the U.S. press promoting mAssets and MIR tokens to U.S. investors. Landsman Decl. ¶ 9 (citing *Our mission is to bring decentralized monies to as many blockchains as possible: Terraform Labs CEO* (July 12, 2021) Yahoo! News (https://news.yahoo.com/mission-bring-decentralized-monies-many-171201969.html) (quoting Respondent Kwon as Terraform's CEO: "So we have things like Mirror protocol, which creates synthetic assets that track the price of real-world assets . . . so this would be, for example, mirrored Tesla, or mirrored Apple," referring to the equity securities of U.S.-based companies Apple, Inc. and Tesla, Inc.). These substantial contacts with the U.S. securities markets also establish specific personal jurisdiction. *See, e.g., SEC v. Knowles*, 87 F.3d 413, 417-419 (10th Cir. 1996) (finding that former president of Bahamian companies had sufficient minimum contacts for personal jurisdiction in a subpoena enforcement action, based on his trading activities directed toward United States); *Balestra*, F.Supp.3d at 350-51 (exercising jurisdiction when party "targeted the U.S. market in an effort to promote the sale of ATB coins, the very unregistered security at issue in this litigation.").

### III. CONCLUSION

For the foregoing reasons, the Commission respectfully requests that Court order Respondents to comply with the Subpoenas.

Respectfully submitted,

/s/ James P. Connor
JAMES P. CONNOR
U.S. Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C.  20549
Tel:  (202) 551-8394
Email:  connorja@sec.gov

December 27, 2021

## CERTIFICATE OF SERVICE

I, James P. Connor, hereby certify that on December 27, 2021, I filed the foregoing Reply in Support of the SEC's Application for an Order Requiring Compliance with Subpoenas through the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

/s/ James P. Connor
James P. Connor